No. 25-30700

---

**In the United States Court of Appeals
For the Fifth Circuit**

---

**JENNIFER PAYNE,**

**Plaintiff - Appellant**

**v.**

**HAMMOND CITY,**

**Defendant - Appellee**

---

**On Appeal from the United States District Court
for the Eastern District of Louisiana, No. 2:24-cv-01857**

---

**BRIEF OF PLAINTIFF - APPELLANT**

---

**ANNA M. SINGLETON, LSBN #40050**
*KIEFER & KIEFER*
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
Telephone:  (504) 828-3313
Facsimile:   (504) 828-0024

*Counsel for Plaintiff - Appellant*

March 6, 2026

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Honorable Court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant:**
   Jennifer Payne

2. **Counsel for Plaintiff-Appellant:**
   Anna M. Singleton, attorney for Plaintiff-Appellant
   Ashley Traylor Anderson, attorney for Plaintiff-Appellant

3. **Defendant-Appellees:**
   City of Hammond

4. **Counsel for Defendant-Appellee**:
   Nan Allesandra, Counsel for Defendant-Appellee Andre Coudre, City of Hammond Attorney & Attorney for Defendant-Appellee

5. **Non-Party:**
   Hammond Police Department
   Chief Edwin Bergeron, Hammond Police Chief

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, a copy of this Certificate was electronically filed via CM/ECF and served on all counsel of record.

Signed:

s/ Anna Singleton
March 23, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.4, Plaintiff-Appellant, Jennifer Payne respectfully suggests that oral argument is likely to assist the Court in deciding this matter.

Payne alleges that the City of Hammond discriminated her on the basis of her sex and disability. Payne further alleges that the City failed to provide her with reasonable accommodation and terminated her in retaliation for reporting the aforementioned discrimination. In this appeal, Payne seeks a partial reversal of the District Court's grant of Defendant-Appellee's Motion for Summary Judgment. Payne's claims require a fact-intensive analysis of Title VII as well as the relevant Louisiana Statutes. Plaintiff-Appellant respectfully suggests that oral argument would be helpful to the Court in deciding this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................2

STATEMENT REGARDING ORAL ARGUMENT .............................................4

TABLE OF CONTENTS.........................................................................................5

TABLE OF AUTHORITIES ...................................................................................7

STATEMENT OF JURISDICTION........................................................................8

STATEMENT OF THE ISSUES PRESENTED....................................................8

I.    STATEMENT OF THE CASE.................. **Error! Bookmark not defined.**

    A.    Payne's Employment History. ..................................................9

    B.    The City's Sick Leave Policies and light duty. ......................10

    C.    Payne submitted an Affidavit by a fellow male police officer regarding different treatment surrounding light duty. ........................................14

    D.    Payne's EEOC Charge of Discrimination and date of demotion. ..........15

    E.    Payne's two rank demotion while she was on a scheduled and approved vacation with other Hammond Police Officers.................................15

    F.    Payne's subsequent sick leave violation. ...............................17

    G.    The District Court erred in finding that the City meaningfully engaged in the interactive process. ........................................18

II.    PROCEDURAL HISTORY.......................................................19

III.    STANDARD OF REVIEW. ...................................................20

IV.    SUMMARY OF THE ARGUMENT .......................................20

V.    ARGUMENT. ..........................................................................22

    A.    The district court erred in finding that payne did not offer direct evidence of discrimination and in dismissing her title VII sex discrimination claim and in applying an improperly rigid comparator standard......................24

    B.    The disparate demotion and subsequent termination. ...........................26

    C.    The district court improperly credited the City's explanation for the disparate treatment without hearing from Payne's witnesses at trial................29

    D.    The district court erred in granting summary judgment because temporal proximity and circumstantial evidence create a genuine issue of material fact. ..........................................................30

E.  Genuine disputes exist as to whether Appellant could perform the essential functions of her sedentary lieutenant job with reasonable accommodation and dismissal was inappropriate. ..................................................................................33

F.  Disability and Reasonable Accommodation Issues. ...................................33

G.  Procedural irregularities reinforce the need for reversal. ........................34

VI.  CONCLUSION. ..............................................................................................35

CERTIFICATE OF SERVICE ...........................................................................38

CERTIFICATE OF COMPLIANCE....................................................................38

# TABLE OF AUTHORITIES

**Cases**

*Devere v. Forfeiture Support Assocs., LLC*, 613 Fed. Appx. 297 (5th Cir. 2015) 19, 29

*In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)..............................................33

*Lee v. Kansas City Southern Railway Co.*, 574 f.3D 253 (5th Cir. 2009).. 20, 24, 27, 28

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).............................. 23, 29

*Renda Marine, Inc.*, 667 F.3d 651, 662 (5th Cir. 2012) ...............................................33

*Wallace v. Methodist Hosp. Sys.* 271 F.3d 219 (5th Cir. 2001) ...............................23

*Wallace v. Seton Family Hospitals*, 777 Fed. Appx. 83 (5th Cir. 2019)........... 28, 29

**Statutes**

U.S.C. § 1331 ....................................................................................................7

**Rules**

Fed. R. App. P. 32(a)(7)(B) ................................................................................36

Fed. R. App. P.32(f)..........................................................................................36

Fed.R.Civ.P. 56(a)................................................................................ 19, 28, 33

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this matter pursuant to U.S.C. § 1331 as this action arose under the Constitution and laws of the United States, specifically because Appellant alleged claims arising under Title VII and the Americans with Disabilities Act. The District Court granted Defendant's Motion for Summary Judgment and entered a final judgment in favor of Defendant on November 6, 2025. Plaintiff timely filed her notice of appeal on November 26, 2025.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the District Court erred in dismissing Payne's Title VII sex discrimination claim where Appellant introduced sworn evidence that a male police officer similarly situated under identical leave policies was granted light duty when Appellant was denied it.

2. Whether summary judgment on the retaliation claim was improper where Appellant produced evidence directly rebutting the stated reason for her demotion, thus creating a genuine dispute of pretext.

3. Whether the district court misapplied the ADA by defining "essential job functions" narrowly and ignoring evidence of Appellant's ability to perform her prior or alternative positions with reasonable accommodation and if the City engaged in the interactive process.

4. Whether the district court erred by dismissing Payne's claims one week before trial and without oral argument in light of the presence of factual disputes and outstanding testimony.

## I. STATEMENT OF THE CASE

### A. Payne's Employment History.

Payne was hired by the Hammond Police Department ("HPD") on July 3, 2000, as a Communications Officer.[1] She was later reclassified as Police Officer on November 20, 2002, and promoted to Probational Sergeant on January 9, 2017, pursuant to a 2015 test wherein she scored 91%.[2] Her working test period began immediately. She was then promoted to Permanent Sergeant on August 4, 2017. This permanent promotion states:

> "The Appointing Authority has determined that this employee has satisfactorily completed his/her working test period. In accordance with civil service law, this employee has satisfactorily served in his/her working test period for at least six months and no more than one year from the date of his/her probational appointment."[3]

On February 18, 2022, Payne was promoted again, this time from Permanent Police Seargeant to Probational Police Lieutenant.[4] Payne was Supervisor over the Communication and Records Division, until she was abruptly moved to Patrol after being told that she missed too much work. Her job duties and responsibilities as

---

[1] ROA. 640 (Ex. 1 to City's Motion for Summary Judgment).
[2] ROA. 641 (Ex. 2 to City's Motion for Summary Judgment).
[3] ROA. 642 (City's Exhibit 3A to Motion for Summary Judgment).
[4] ROA. 643-645 (City's Exhibit 4 to Motion for Summary Judgment).

Seargeant or Lieutenant would have allowed her to return to work on limited or light duty pursuant to the duties and responsibilities of a Seargeant or Lieutenant.[5] Payne's job as Police Lieutenant was supervisory in nature and was a mostly sedentary position where she supervised Officers and reviewed their work.

A personnel form with an effective date of October 25, 2022, stated that the City "paused" her working test period as a Police Lieutenant while she was out on sick leave. The only evidence that the City produced relative to the City's "policy" to pause an employee's promotion test period is a letter written by the Chief of Police, dated April 29, 2025, well after this litigation ensued. [6]

### B. The City's Sick Leave Policies and light duty.

The Hammond Police Department's Sick Leave Policies state that "an employee shall not leave his/her residence or approved place of confinement except for the following reasons:"

    a. Visit a doctor
    b. Visit a hospital or clinic for treatment
    c. Obtain prescription medicines
    d. Attend therapy sessions as prescribed by a physician
    e. Obtain Food
    f. Attend Church
    g. To attend their child's activity/event
    h. Other reasons when the employee receives written notification from Human Resources, the Chief or his designee

---

[5] ROA. 707-717.
[6] ROA. 743 (Exhibit 31 to Defendant's Motion for Summary Judgment)

Or as prescribed by the City's Physician (APR).[7] Despite the above policy, it was applied inconsistently and prevented Payne from reasonably recovering or at least causing delay in her recovery. Chief Bergeron testified that while you are not required to contact a supervisor to approve the enumerated reasons for leaving your place of confinement, it was his belief that officers should contact their supervisor for permission any time they wanted to leave.[8] However Payne's supervisor advised that she did not need to notify him unless the stated reason is not listed in the policy.[9] To lift the restrictions requiring her to remain in her "place of confinement" unless she was approved by her supervisor, hindered her ability to do activities that would have progressed her healing.

Further, the City denied Payne's medical providers request to allow her to leave her place of confinement to assist in her healing and was confined to her home twenty-four (24) hours a day unless she received approval from a supervisor, even though Payne was not being paid for the 24-hour confinement. Payne could not even go for a simple walk without getting approval from her supervisor.[10] It is undisputed that Payne was qualified individual with a disability, it is further undisputed that the disability was known to the City. The only dispute at issue is the third element,

_____

[7] ROA. 673-677 (Exhibit 10 to Defendant's Motion for Summary Judgment).
[8] ROA. 1102-1104 (Deposition of Chief Edwin Bergeron, Exhibit to City's Motion).
[9] ROA. 1290.
[10] ROA. 1104-1105.

11

whether the employer failed to make a reasonable accommodation for the known limitations.

Here, the District Court erred in finding that Plaintiff's request for accommodation of lifting the sick leave restrictions was not a reasonable accommodation. [11] The district court ignored the Affidavit submitted by Dr. Oberlander, Payne's surgeon whose Affidavit and anticipated testimony regarding the restrictions and her recovery. Further, the district court misunderstands the Payne's providers letters (including the City NP), that state that their requests that the restrictions be lifted regarding the sick leave policy. These requests were repeatedly denied.[12] could have easily allowed a reasonable factfinder to conclude that the accommodation was reasonable, and that the City failed to accommodate Payne.

**Light Duty.**

The City maintains that the Police Department, as a Civil Service Organization, does not offer light duty. This conflicts with the record evidence, and the District Court ignored the inconsistent testimony and record evidence regarding the availability of light duty, and improperly credited the City's explanation about its light duty policy. Light duty was available to Hammond Police Department

---

[11] ROA. 1838-1840 (Order and Reasons, p. 30-32).
[12] ROA. 1110-1111.

12

employees but was not tracked, inconsistently applied, and despite Payne's position being able to tolerate light duty as her job responsibilities were not physically demanding as a Seargeant or Lieutenant, this was a reasonable accommodation request. However, the City's pretextual unprecedented demotion of two ranks to patrol officer ensured that she would be required to perform physically demanding tasks that would put her in a position to be forced out, since she required light or limited duty while she reasonably recovered from a two-level spinal fusion surgery.

While the City was adamant that light duty was no longer allowed because they are a civil service department, the City failed to produce any evidence that this was in fact true. Contrary to the City's claims, Payne submitted a public records request regarding the availability of light duty and was advised that they did not track these requests or results.[13]

The City witnesses testified inconsistently about the availability of light duty. Capt. Scivicque testified that in his thirty-three years with the Hammond Police Department "he had never seen it available" [14] That testimony was directly contradicted by the testimony of Chief Bergeron and Lt. Mauro whose testimony ranged from there used to be light duty to there is no longer light duty available to

---

[13] ROA. 1291-1298.
[14] ROA. 1010 (Capt. Scivicque Deposition attached as exhibit to Defendant's Motion for Summary Judgment).

any Officer in any capacity.[15] Diane McMahon, the City's HR Director testified that she was aware of other employees who requested light duty but was not "specifically aware of who they were or what the outcome was."[16] McCahon further testified that she was not aware if the City tracked discrimination claims.[17] Payne questions the veracity of these claims as the Head of HR for the City of Hammond, these would be areas that she would be directly involved in. Additionally, the Hammond Police Department's documents show that light duty is available.[18]

### C. Payne submitted an Affidavit by a fellow male police officer regarding different treatment surrounding light duty.

Payne submitted a sworn Affidavit by a fellow Hammond Police Officer, Ryan Ray, who confirmed that he was offered light duty while out on sick leave, which he rejected, while Payne submitted multiple requests to work light duty that were denied.[19]

The district court erred in finding that light duty was not a reasonable accommodation by failing to consider her previous positions as Lieutenant and Seargeant which she could have performed the essential duties of those positions had she not been demoted in retaliation for engaging in a protected activity. The Court also ignored the Affidavit of Officer Ray, a police officer (not sergeant or

---

[15] ROA. 1429-1429, 659.
[16] ROA. 1316.
[17] ROA. 1320
[18] ROA. 1500-1502.
[19] ROA. 1287-1288.

lieutenant) whose sworn testimony proves that light duty was available to a police officer despite the City's contentions otherwise. Throughout this litigation (and despite Plaintiff's requests), the City never produced a single document to support its claims that light duty is not available for Police Officers. Assuming they had such documents, one would think they would have been produced. The City did not have an answer for the lack of evidence on this issue.

### D. Payne's EEOC Charge of Discrimination and date of demotion.

On May 3, 2023, Payne filed a formal EEOC Charge of Discrimination.[20] The City received notice of Payne's EEOC Charge on May 9, 2023.[21] On May 25, 2023, sixteen days after filling the EEOC Charge, Payne was demoted two ranks, to Police Officer, for a first-time sick leave violation.[22] This was the first time in the Hammond Police Department's history that an Officer has been demoted two ranks for a first-time sick leave violation.[23]

### E. Payne's two rank demotion while she was on a scheduled and approved vacation with other Hammond Police Officers.

On April 29, 2022, Payne submitted a vacation request to take a cruise from September 5-10, 2022. This request was approved.[24] On September 2-3, 2022, two days prior to her scheduled vacation, she underwent an injection in her back and had

---

[20] ROA. 802-803.
[21] ROA. 804.
[22] ROA. 1167.
[23] ROA. 1413.
[24] ROA. 613.

to miss one day of work. She requested to work light duty on the following days, but that request was denied, and she was forced to use her sick days. This was the third time she was denied light duty. Payne's job as Patrol Lieutenant was sedentary in nature and light duty could have been accommodated.

Payne would have only missed one day of work had she been approved for light duty. Payne underwent an injection in her back.[25] She was required to undergo anesthesia and was therefore prohibited from returning to work that day and the next. Immediately, Captain Wayne Scquiviqe researched how many sick days she used and notified her that she would need to see the City Doctor before **returning to work**. No one told her that she was prohibited from going on her approved vacation. In fact, when scheduling her doctor appointments with the City's Human Resource Officer, she referenced her upcoming vacation to best coordinate dates for her to see the doctor, and the HR Officer advised her to "enjoy her vacation."[26]

Payne's September 1, Attending Physician Report approving light duty on September 3-10, 2022. Payne went on her scheduled vacation with other Hammond Police Officers and posted about it on Facebook. While Payne was on vacation, Captain Wayne Scquivique, her Captain and direct report, submitted a complaint

---

[25] Importantly, these injections are routinely done on patients in an attempt to prevent them from having to undergo a surgery, which Payne eventually required. It is not at all unreasonable for Payne to have gone on a planned and approved vacation a few days after the injection, especially given her coordination with HR and travelling with other officers and posting on social media.
[26] ROA. 1266-1268.

16

that she violated the sick leave policies by going on the cruise while on sick leave, and this initiated an investigation.

Hammond Police Department's Internal Affairs Investigator initiated an investigation into Payne's alleged violation of the sick leave policy. He did not interview anyone during the investigation, not even Payne. He only reviewed photographs found on Facebook (many of which do not depict Payne at all).[27]

Payne was demoted two ranks for this first-time violation, and all of the officers, including the Chief, testified that this was the first time they knew of an officer receiving a two rank demotion for a first time sick leave violation.[28] Importantly, the demotion to Police Officer requires a more difficult fitness for duty physical officers must pass before returning to work, which was the purpose of the two-rank demotion to Police Officer.[29]

### F. Payne's subsequent sick leave violation.

Despite the sick leave policy authorizing Officer's to leave their "place of confinement" to obtain food, Payne was once again investigated and written up for violating the sick leave policy for attending a fundraiser.[30] Again, this violation was reported by Capt. Wayne Squivique, her supervisor. He was reviewing Facebook

---

[27] ROA. 685-695.
[28] ROA. 690, 695.
[29] See ROA. 694; but see also ROA. 695 where they added a new section to the Final Disciplinary Form specifically to demote Payne.
[30] ROA. 749-751.

and saw a photograph of her attending the event to eat dinner and reported her, causing an investigation by Internal Affairs. However, unlike her first sick leave violation where she was demoted two ranks, for her second violation, she was suspended for one day, to be enforced upon her return from sick leave. She never served the one-day suspension because she was subsequently terminated in December 2023.

### G. The District Court erred in finding that the City meaningfully engaged in the interactive process.

Payne underwent a spinal fusion surgery by Dr. Eric Oberlander.[31] Dr. Oberlander received and completed a two-page job analysis report on September 5, 2023, regarding Payne wherein he advised that she should be restricted to lifting 35-40 pounds and should likely not work over 8-hour shifts.[32] Dr. Oberlander suggested that a functional capacity exam could be done as a reasonable accommodation to establish if Payne could safely perform her job with or without accommodations.[33]

Dr. Oberlander reviewed the job descriptions of the police officer and police sergeant for the City of Hammond and in his medical opinion, Payne could have performed essential functions of both positions after a reasonable time to recover from a major surgery.[34] In his sworn affidavit, Dr. Oberlander also stated that he was

---

[31] ROA. 1276-1277 (Exhibit 7 to Plaintiff's Opposition).
[32] Id.; ROA. 1283-1286 (Exhibit 7A Ex. B to Plaintiff's Exhibit 7 to Opposition)
[33] ROA. 1841.
[34] ROA. 1841.

never contacted by the City of Hammond to discuss Payne's ability to return to work after he completed the three-page document sent to him by the City. The City physician also never consulted Dr. Oberlander to discuss Payne's limitations.[35]

Payne's medical providers requested that the City allow Payne to leave her home to aid in her recovery and stated that these restrictions likely delayed her recovery.[36] They were never interviewed nor were their letters taken into consideration when the City terminated Payne.

The City never followed up with Payne's medical providers after receiving the 2-page job analysis reports,[37] nor did they have her undergo a functional capacity examination as recommended.

## II.    PROCEDURAL HISTORY.

On July 25, 2024, Payne filed her Complaint against the City of Hammond alleging discrimination on the basis of her sex and disability, and for retaliation for filing an EEOC Charge and participating in an investigation.

On the eve of trial and after the Pre-Trial Conference, the District Court issued a 42-page opinion granted Defendant's Motion for Summary Judgment, dismissing all of Plaintiff's claims. During the Pre-Trial Conference, the Court granted the

---

[35] ROA. 1841.
[36] ROA. 59.
[37] ROA. 1315.

parties an additional day due to the number of witnesses, and authorized Appellant to perpetuate a witness deposition to reduce trial costs.

The court ruled, without oral argument, finding that Appellant failed (1) to establish a prima facie case of Title VII sex discrimination, alleging that Plaintiff failed to prove that her comparator was "nearly identical," (2) failed to prove that light duty assignment or reassignment were reasonable accommodations, and (3) failure to engage in the interactive process, and (4) rebut the Department's stated reason for her demotion regarding her retaliatory demotion and discharge claims.

## III.    STANDARD OF REVIEW.

This Court reviews summary-judgment rulings de novo, applying the same standard as the district court but viewing all evidence in the light most favorable to the non-movant. *Devere v. Forfeiture Support Assocs., LLC*, 613 Fed. Appx. 297 (5th Cir. 2015).  Under Fed.R.Civ.P. 56(a), summary judgment is proper when "there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## IV.    SUMMARY OF THE ARGUMENT.

The district court committed multiple reversible errors. It disregarded sworn comparator evidence, weighed credibility against Appellant, construed every fact in the City's favor, and repeatedly treated factual disputes as though they were

20

resolved. This violates bedrock summary-judgment principles and the spirit of Rule 56.

First, the court's retaliation analysis was flawed. Appellant was demoted 15 days after filing her EEOC charge, extraordinarily close temporal proximity, and subjected to unprecedented punishment: the first two-rank demotion for a first sick-leave violation that anyone recalls in the history of the Hammond Police Department. This punishment was handed down over six months after the Internal Affairs investigation found that the violations were "founded," and sixteen (16) days after Payne filed her EEOC Charge. A reasonable factfinder could find this pretextual.

Second, Appellant submitted direct comparator evidence: the sworn affidavit of Officer Ryan Ray stating the Chief offered him light-duty work at the very time the City insisted light duty was unavailable and denied it to Appellant.[38] The district court required Appellant to produce comparators under "nearly identical" circumstances but then applied a stricter standard than the Fifth Circuit allows. In *Lee v. Kansas City Southern Railway Co.*, 574 f.3D 253 (5th Cir. 2009), comparators need not match perfectly, only in material respects. Here, employers, sick leave policies, job duties and restrictions here were comparable, and the record show male officers were offered accommodations denied to Appellant.

---

[38] ROA. 1287-1288.

21

Third, the court erred in rejecting Appellant's ADA and LEDL claims. Her Lieutenant duties were primarily sedentary supervisory functions, which her physician confirmed she could perform on light duty with reasonable recovery time. The district court ignored this evidence, treated recovery time as prohibited "indefinite leave," and again made factual findings that should be reserved for trial.

Viewing the record properly, the District Court could conclude that the Hammond Police Department treated Appellant differently because of her sex and disability, failed to accommodate her, and retaliated against her. Accordingly, the Court should reverse the grant of summary judgment on these issues and remand the matter to the trial court for further proceedings.

## V.    ARGUMENT.

Appellant, a longtime employee of the City of Hammond Police Department, having served honorably for more than twenty-three (23) years in various capacities. Throughout her tenure, she received positive evaluations, until the events giving rise to this action.

Appellant sustained a medical condition that required her to undergo a two level fusion surgery, which temporarily limited her ability to perform certain tasks.[39] Despite light duty being offered in the past, Payne was told that she was unable to return to work on light duty as a reasonable accommodation because "light duty was

---

[39] ROA. 1285-1286.

22

not available." The district court incorrectly states that Payne was never cleared to return to work. That is incorrect. Payne was cleared on several occasions to return to work on light duty status **BEFORE HER DEMOTION** to patrol officer and after.

In direct conflict with the City's assertions that light duty was not available, Officer Ryan Ray, a Hammond Police Officer, submitted a sworn Affidavit and was scheduled to testify at trial regarding the disparate treatment that Payne received compared to his male colleagues.[40] Plaintiff planned to call additional witnesses on this issue at trial as set forth on her Witness List. Officer Ray Affidavit specifically states that he was offered light duty and Payne requested and was denied that request. The district court alleges that the Affidavit does not set forth facts to show that he was an "identical" comparator. However, the evidence proves that Officer Ray was a fellow officer, the Appointing Authority is the person who makes determinations about both Payne and Ray's employment and/or termination and they are both subject to the same sick leave policies and procedures.

Payne was demoted two ranks for an alleged first-time sick leave violation, despite her being on an approved vacation at the time of the violation. Payne was found to have violated the sick leave policy a second time, when she was suspended for one day. Payne was subsequently terminated while still out on sick leave. Prior to her termination, Payne was not consulted about reasonable accommodation (other

_____

[40] ROA. 1287-1288.

23

than being denied light duty on at least three occasions), her treating physicians were not contacted after they were asked to submit a two-page report, and her treating providers recommendations that the City lift the sick leave restrictions regarding being confined to your home were not considered when evaluating Payne's termination.

These factual disputes should have proceeded to trial, and the witnesses should have been allowed to testify about the different treatment experienced by Payne. Instead, the court credited the City's version of events and discounted Appellant's evidence. This alone warrants reversal.

**A. The district court erred in finding that payne did not offer direct evidence of discrimination and in dismissing her title VII sex discrimination claim and in applying an improperly rigid comparator standard.**

Payne can prove intentional discrimination by direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys*. 271 F.3d 219 (5th Cir. 2001). Despite Payne producing direct comparator evidence in the form of a sworn Affidavit of a fellow male police officer whose testimony is that he was given the opportunity for sick leave by the Chief at the same time Payne requested and was rejected light duty; the district court found that Payne failed to present direct evidence and would therefore have to prove intentional discrimination through the *McDonnell Douglas*

burden shifting framework.[41] Therefore, Payne must show 1) she is in a protected class; 2) qualified for the job; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated male employees. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973).

The crux of the issue is whether Payne was treated less favorable than similarly situated male employees. Without hearing any testimony, the District Court improperly applied a heightened "nearly identical" standard for Payne's comparators. In concluding that Ryan Ray's Affidavit was insufficient comparator evidence, the District Court reasoned that they were not "nearly identical" but did not identify why, only referencing the conduct history.

In *Lee v. Kansas City Southern Railway Co.*, 574 f.3D 253 (5TH Cir. 2009), the Fifth Circuit clarified that employees are similarly situated when their circumstances are "nearly identical" in the relevant respects, not when they are identical in every factual detail. The Court reasoned that employment actions being compared will be deemed to have been taken under nearly identical circumstances **when the employees compared held the same responsibilities, shared the same supervisor, or had employment determined by the same person.** *Id.* (emphasis added)

---

[41] ROA. 1818 (Order and Reasons, p. 10).

Here, both Payne and Ray were Police Officers, who had the same chain of command and their employment was determined by the Appointing Authority. Officer Ray was offered to work light duty while out on sick leave, while Payne requested and was rejected that same accommodation. Importantly, it was the Chief of Police himself who offered light duty to Officer Ray, while refusing Payne light duty and punishing her for allegedly violating the sick leave policy by demoting her two ranks. **Payne was replaced by a male officer after her demotion and after her termination.**

Payne also offered testimony regarding two additional male employees who were not disciplined for sick leave violations, which the Court struck as hearsay. Those two employees were allowed to leave their place of confinement without issue. Daniel Boudreaux, another officer, also planned to testify at trial regarding the same.

## B. The disparate demotion and subsequent termination.

The district court also appears to misunderstand Payne's argument regarding the violation at issue that led to her two-rank demotion. Payne was written up for a first-time sick leave violation for leaving her place of confinement without authorization and while on sick leave.[42] Prior to Payne's two rank demotion, this was never used for a first-time sick leave violation. Her male comparators were subject

---

[42] ROA. 693-695.

26

to no violation. Without hearing from any witness, the district court held that Plaintiff failed to make a prima facie case of sex discrimination on disparate treatment on the disparate sick leave disciplinary actions. This is error.

The district court further erred by reasoning that even if Payne made a prima facie case, her claims would fail…"Defendant denies that it failed to discipline male officers who violated sick leave and offers a non-discriminatory reason for disciplining Plaintiff, point to the fact that Plaintiff not only violated sick leave policy by leaving her house without authorization, but left the entire country.[43] The Court again improperly credits the City's explanation and ignores Payne's reasonable explanation that she was on approved vacation which began just days after she was forced to be placed on sick leave because she was denied light duty three times at that point.

There is a genuine dispute whether Payne's first sick leave violation and subsequent unprecedented demotion was discriminatory. It is clear that Payne was treated less favorably and was replaced by a male officer after she was demoted (and after she was terminated). Payne listed other witnesses that were subpoenaed to testify at trial. These male witnesses anticipated testimony would have confirmed Payne's disparate treatment, as another Hammond Police Officer who was on

---

[43] ROA. 1827 (District Court's Order and Reasons, p. 19).

extended sick leave was never punished for leaving his place of confinement on numerous occasions and with full knowledge of command.[44]

A reasonable factfinder could conclude that Payne was treated less favorably than a similarly situated male employee with respect to light duty assignments, sick leave violations and disciplinary actions. Payne was replaced by males both after her demotion and her termination. The district court found no comparator evidence, but the record includes a sworn affidavit from a male coworker who confirmed he received light duty under the same policy and circumstances that were used to deny Appellant's request. This testimony, if credited, satisfies the fourth element of the McDonnell Douglas prima facie framework and raises a genuine issue of material fact on disparate treatment. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Because a reasonable factfinder could believe this evidence and infer sex based differential treatment, summary judgment was improper.

When viewed in the light most favorable to Payne, the comparator evidence permits a reasonable jury to conclude that male officers received favorable treatment for comparable conduct, where Officer Ray was offered light duty, Payne was rejected, found to violate the sick leave policy and  was subjected to the most severe

---

[44] Payne made a strategic call not to depose Mr. Boudreaux and planned only to have him testify at trial.

28

demotion in the department's history for a first time sick leave violation, a two-rank demotion.

Comparator analysis is not a search for identical twins. As the Fifth Circuit explained in *Lee v. Kansas City Southern Railway Co.*, employees are similarly situated when their circumstances are "nearly identical" in the respects relevant to the employer's disciplinary decision. By dismissing Plaintiff's comparator evidence based on immaterial distinctions, the district court imposed a standard that is inconsistent with Fifth Circuit precedent.

**C. The district court improperly credited the City's explanation for the disparate treatment without hearing from Payne's witnesses at trial.**

The district court erred in concluding that Appellant failed to make a *prima facie* showing of disparate treatment. Under the McDonnell Douglas framework, Appellant needed only to show that (1) she was a member of a protected class, (2) qualified, (3) suffered an adverse employment action, and (4) similarly situated employees outside the class were treated more favorably.

Appellant submitted an affidavit from a male employee who received light duty under the same policy and circumstances. This comparator shared the same supervisor, department, and policy coverage satisfying the "nearly identical" comparator standard under *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). "Whether two employees are "similarly situated" generally presents a

question for the jury. *Wallace v. Seton Family Hospitals*, 777 Fed. Appx. 83 (5th Cir. 2019).

The district court's statement that "Plaintiff offered no evidence" ignores this affidavit, resolving credibility and inferences issues against the non-movant an improper standard under Rule 56.

**D. The district court erred in granting summary judgment because temporal proximity and circumstantial evidence create a genuine issue of material fact.**

Title VII makes it unlawful for an employer to retaliate against an employee who has made a charge, testified, assisted, or participated in any manner in an investigation. *Devere v. Forfeiture Support Assocs. L.L.C.*, 613 Fed. Appx. 297, (5th Cir. 2015). The District Court Correctly found that Plaintiff established a *prima facie* case of retaliatory demotion under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

However, the District Court erred in finding that Plaintiff failed to present any evidence that the City's stated purpose for demoting Payne two ranks and eventually terminating her was pretextual. To satisfy her burden, Payne must offer evidence that either 1) the City's articulated reasons are pretext for discrimination, or 2) the City's stated reasons while true, are only some reason for its conduct, and discrimination is another motivating factor. *Wallace v. Seton Family Hosp*. 777 Fed. Appx. 83 (5th Cir. 2019).

The City's stated reason for demoting Payne two ranks was that she violated the sick leave policy. However, as discussed above, this was the first time that a Hammond Police Officer was demoted two ranks for a first violation of the sick leave policy.[45] Payne was recently promoted to Lieutenant, and her performance evaluations were positive. Further, the District Court ignored the evidence that showed that Plaintiff was previously approved for vacation, went on a cruise with other officers, openly discussed her upcoming cruise with human resources before leaving so that she could reschedule a doctor's appointment, and was told to "enjoy your vacation."[46] There is no evidence that Payne was told she could not go on her approved vacation, nor did the City present any evidence that the sick leave policy prohibited her from going from sick leave to vacation or vice versa.

Further, The District Court improperly required heightened evidence of pretext. While temporal proximity alone might not establish causation, it is highly probative when combined with other evidence.) The temporal proximity between Payne's protected activity and the adverse employment action is striking. Only sixteen days (16) after learning of Payne's EEOC Charge, the City demoted her two ranks, an action that is unprecedented in the Departments history.[47]

---

[45] ROA. 1093, 1413.
[46] ROA. 1266-1268.
[47] ROA. 1266-1268.

31

The circumstantial evidence further supports that the City's stated nondiscriminatory reason is pretextual. Here, Payne was on an approved vacation when she allegedly violated the sick leave policy. She was placed under investigation for this alleged sick leave violation on September 6, 2022.[48] Prior to leaving for her approved vacation, she requested to return to work on light duty to prevent having to see the City Doctor. This request was denied. Assuming *arguendo* that Payne violated the sick leave policy, if true, it was only some reasons for its conduct and there is a genuine dispute whether discrimination was another motivating factor.

Payne's alleged sick leave violation was deemed "founded," and she was notified of this finding on November 18, 2022.[49] However the City took **no action** on this violation until six months (6) later, and only after she filed her EEOC Charge sixteen (16) days prior. Taken together, the temporal proximity plus circumstantial evidence of pretext is enough to create a fact issue. When an employee files an EEOC Charge and is soon thereafter subjected to the first two-rank demotion in the history of the department, the question of motive is not appropriate for summary judgment.

---

[48] ROA. 682-684, 685-692.
[49] *Id.*

32

Plaintiff has presented sufficient evidence from which a reasonable factfinder could conclude that the stated justification for Payne's demotion is pretextual and that retaliation for filing an EEOC charge was the real motivating factor.

**E. Genuine disputes exist as to whether Appellant could perform the essential functions of her sedentary lieutenant job with reasonable accommodation and dismissal was inappropriate.**

The ADA requires an individualized inquiry into the actual essential functions of the employee's actual job. The district court instead analyzed whether Appellant could perform the full physical duties of a patrol officer. This was legal error.

The record evidence shows:

• Lieutenant duties in Communications were primarily supervisory and sedentary.

• Dr. Oberlander stated Appellant could perform these essential duties after recovery and with light-duty restrictions.

• Hammond Police Department never considered her medical providers recommendations that she be allowed to leave her home to assist in her recovery.

• Hammond Police Department never engaged in a meaningful interactive process.

These facts create a genuine dispute that should have been adjudicated at trial.

**F. Disability and Reasonable Accommodation Issues.**

Appellant's condition limited her temporarily from performing certain physically strenuous duties required in her post-demotion role, but she could perform the essential functions of her previous position and other administrative or

investigative duties regularly assigned to officers. She proposed light duty, lifting restrictions on the sick leave policies and alternate assignments as reasonable accommodation. The Department ignored and/or rejected those alternatives and refused to consider reassignment or modified duty.

The district court held that Appellant was not a "qualified individual with a disability" because she could not perform the "essential functions of her current job." It also ruled that light duty and reassignment were not reasonable accommodations as a matter of law, despite comparator evidence showing those accommodations had been provided to others. Payne could have worked in her former position as a Lieutenant and this work by its nature is light duty. However, the purpose of her two-rank demotion meant that she would be forced to undergo a more rigorous physical upon returning to work as a Patrol Officer, as designed by the City.

### G. Procedural irregularities reinforce the need for reversal.

Even viewed through the deferential lens given to the District Court's trial management decisions, the District Court's procedural handling underscores why summary judgment was improper. A reasonable factfinder could have resolved the disputed evidence in Appellant's favor, yet the case was dismissed one week before its scheduled bench trial after the court had extended the trial date and authorized additional testimony for cost-saving purposes.

34

Granting summary judgment at that stage, without oral argument and despite conflicting evidence, deprived the designated factfinder (the judge at trial) of its proper role to assess credibility and weigh testimony firsthand. Fifth Circuit precedent makes clear that summary judgment cannot substitute for trial where factual disputes remain, even when the fact finder is the judge. *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991); *Renda Marine, Inc.*, 667 F.3d 651, 662 (5th Cir. 2012).

Here, the record contained sworn statements, contested leave records, and conflicting interpretations of policy, precisely the type of factual controversies that a reasonable factfinder must decide at trial. By resolving those disputes itself, the district court stepped beyond Rule 56's limited function. Reversal is warranted both to correct the substantive error and to restore the proper fact-finding process contemplated by the Federal Rules.

## VI.    CONCLUSION.

Taken together, these errors demonstrate that the district court resolved factual controversies that a reasonable factfinder could only determine after hearing live testimony. Each of Appellant's civil-rights claims, sex discrimination, disability discrimination, and retaliation - arose in the context of public employment within a police department, where fairness, discipline, and equal opportunity are of fundamental public concern. The summary-judgment record contains conflicting

evidence about how departmental leave policies were applied, whether accommodations were available, and why Appellant was demoted in an unprecedented manner and then terminated after 23 years with the Department.

The district court erred in finding that Payne was given reasonable accommodation and that they meaningfully participated in the interactive process. There is record evidence that creates a genuine dispute as to those claims, in addition to the retaliation claims.

Those questions turn on credibility and motive, matters reserved for the fact finder, not for resolution on the papers. By granting judgment one week before trial, the court foreclosed the very evidentiary testing designed to ensure confidence in the integrity of police-department employment decisions.

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's order granting summary judgment to the City Hammond Police Department and remand the case for trial on all claims. Such relief will allow the trier of fact to resolve the disputed issues of motive, comparator treatment, and reasonable accommodation that lie at the heart of this public-employment discrimination case.

Respectfully submitted,

s/ Anna Singleton
**ANNA M. SINGLETON (#40050)**
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
Telephone:  (504) 828-3313
Facsimile:  (504) 828-0024
Email:     megan@kieferlaw.com
              asingleton@kieferlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, a copy of this brief was electronically filed via CM/ECF and served on all counsel of record.

Signed:

s/ Anna Singleton
March 23, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), containing 7,126 words, excluding the parts exempted by Fed. R. App. P.32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type requirements of Fed. R. App. P. (A)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 2010 with a 14-point font named Times New Roman.

Signed:

s/ Anna Singleton
March 23, 2026