**No. 25-30700**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**Jennifer Payne,**
**Plaintiff - Appellant**

**v.**

**Hammond City,**
**Defendant - Appellee**

---

**On Appeal from**
**United States District Court for the Eastern District of Louisiana**
**Civil Action No. 2:24-CV-1857**
**Hon. Susie Morgan, Presiding**

---

# ORIGINAL BRIEF OF DEFENDANT-APPELLEE HAMMOND CITY

---

**Respectfully Submitted,**

**PHELPS DUNBAR LLP**
**MARIA NAN ALESSANDRA (#16783)**
**365 Canal St., Suite 2000**
**New Orleans, LA 70130**
**Telephone: (504) 566-1311**
**Facsimile: (504) 568-9130**
**Email: nan.alessandra@phelps.com**

**AND**

**CASHE COUDRAIN & BASS**
**ANDRE G. COUDRAIN (#1789)**
**106 South Magnolia St. (70403)**
**P.O. Drawer 1509**

**Hammond, LA 70404**
**Telephone: (985) 542-6848**
**Facsimile: (985) 542-9602**
**Email: agc@ccbattorneys.com**

**APPEAL COUNSEL FOR DEFENDANT-APPELLEE, HAMMOND CITY**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this court may evaluate possible disqualification or recusal.

**Defendant-Appellee:**

Hammond City

**Counsel for Defendant-Appellee:**

PHELPS DUNBAR LLP
MARIA NAN ALESSANDRA (La. #16783)
365 Canal St., Suite 2000
New Orleans, LA 70130
Telephone: (504) 566-1311

CASHE COUDRAIN & BASS
ANDRE G. COUDRAIN (La. #1789)
106 South Magnolia St. (70403)
P.O. Drawer 1509
Hammond, LA 70404
Telephone: (985) 542-6848

**Plaintiff-Appellant:**

Jennifer Payne

**Counsel for Plaintiff-Appellant:**

KIEFER & KIEFER
Anna Singleton (La. #40050)
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
Telephone: (504) 828-3313

ANDERSON TRAYLOR EDWARDS
Ashley Anderson Traylor
Scott Campbell Sledge
P.O. Box 4129
Hammond, LA 70404
Telephone: (985) 345-7777

/s/*Maria Nan Alessandra*
Maria Nan Alessandra (#16783)
Andre G. Coudrain (#1789)
**Attorneys for Defendant-Appellee,**
**Hammond City**

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Hammond City does not request oral argument. This case involves the application of authoritative and settled law. The facts and legal arguments supporting the District Court's Summary Judgment Order and Reasons are "adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument," within the meaning of FED. R. APP. P. 34(a)(2)(c). Thus, Appellee respectfully submits that oral argument would not be beneficial in this appeal.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........ i

STATEMENT REGARDING ORAL ARGUMENT ........ iii

TABLE OF CONTENTS ........ iv

TABLE OF AUTHORITIES ........ vii

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 4

I. PROCEDURAL BACKGROUND ........ 4

II. FACTUAL BACKGROUND ........ 4

A. HPD Employment History ........ 5

B. Initiation of Sick Leave and Light Duty Request (September 2, 2022) ........ 6

C. Cruise to Mexico While on Sick Leave (September 5-10, 2022) ........ 6

D. Cruise Disciplinary Investigation (September 9, 2022) ........ 7

E. Light Duty Request and Unfulfilled City Doctor Requirement (September 16, 2022) ........ 7

F. Lack of Physician Authorization to Work (Sept. 21, 2022 – July 31, 2023) ........ 8

G. Pausing Probationary Lieutenant Working Test Period (Oct. 25, 2022) ........ 8

H. Expiration of Firearms Qualification (Feb. 18, 2023) ........ 8

I. Attending Fundraiser Event While on Sick Leave (March 18, 2023) and Fundraiser Disciplinary Investigation (March 29, 2023) ........ 9

J. EEOC Charge Filing (May 3, 2023) ........ 9

K. Completion of Fundraiser Investigation and OSE Consult (May 4, 2023) .......... 10

L. Notice of Fundraiser Investigation Findings and Notice of EEOC Charge (May 9, 2023) .......... 10

M. Demotion to Police Officer Rank (May 25, 2023) .......... 11

N. Unserved Disciplinary Suspension (August 8, 2023) .......... 11

O. New Authorization to Return for Limited Duty (August 1, 2023) .......... 11

P. Interactive Process Finds Permanent Restrictions (Aug. 30-Sept. 25, 2023) .......... 12

Q. Additional Light Duty Authorizations (October 6-26, 2023) .......... 12

R. Second Opinion Confirms Permanent Restrictions (November 2, 2023) .......... 12

S. Hearing on Fitness-For-Duty Status (November 20, 2023) .......... 13

T. Payne's Request for Unlimited Authorization for Activities Outside Home (November 27-30, 2023) .......... 13

U. Removal from Service (December 18, 2023) .......... 13

SUMMARY OF THE ARGUMENT .......... 14

SCOPE AND STANDARD OF REVIEW .......... 17

I. SCOPE OF APPELLATE REVIEW .......... 17

II. STANDARD OF REVIEW .......... 18

ARGUMENT .......... 19

I. APPELLANT CANNOT RELY ON UNSUBSTANTIATED CONTENTIONS .......... 19

II. ISSUES NOT RAISED BEFORE DISTRICT COURT ARE WAIVED .......... 19

III. DISTRICT COURT DID NOT ERR IN DISMISSING SEX DISCRIMINATION CLAIMS .......... 20

*Issue No. 1* - District Court properly dismissed Title VII sex discrimination claim regarding light duty. ....................................................................21

*Issue No. 2* - District Court properly dismissed Title VII sex discrimination claim regarding sick leave policy requirements..............................................24

*Issue No. 3* - District Court properly dismissed Title VII sex discrimination claim regarding sick leave disciplinary actions. .............................................27

IV. DISTRICT COURT DID NOT ERR IN DISMISSING DISABILITY DISCRIMINATION CLAIMS ..................................................................30

*Issue No. 4* - District Court properly dismissed disability discrimination claim of failure to accommodate by indefinite leave. ...................................30

*Issue No. 5* – District Court properly dismissed disability discrimination claim of failure to accommodate by light duty.............................................33

*Issue No. 6* - District Court properly dismissed disability discrimination claim of failure to lift sick leave policy requirements...................................36

*Issue No. 7* - District Court properly dismissed disability discrimination claim of failure to accommodate by reassignment.......................................38

*Issue No. 8* - District Court properly dismissed disability discrimination claim of failure to engage in interactive process..........................................39

V. DISTRICT COURT DID NOT ERR IN DISMISSING RETALIATORY DEMOTION AND DISCHARGE CLAIMS ................................................41

*Issue No. 9* - District Court properly dismissed retaliatory demotion claim. .42

*Issue No. 10* - District Court properly dismissed retaliatory discharge claim. ..........................................................................................................44

VI. *ISSUE NO. 11* - DISTRICT COURT PROPERLY DISMISSED WRONGFUL TERMINATION CLAIM ..................................................46

VII. *ISSUE NO. 12* - DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT DISMISSAL BEFORE BENCH TRIAL .......50

CONCLUSION.........................................................................................................51

CERTIFICATE OF COMPLIANCE ......................................................................54

# TABLE OF AUTHORITIES

## Cases

*Abbood v. Tex. Health & Human Servs. Comm'n*, 783 Fed. Appx. 459 (5th Cir. Nov. 17, 2019) .......... 42, 46

*Abbott v. Equity Group, Inc.*, 2 F.3d 613 (5th Cir. 1993) .......... 17

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017) .......... 21

*Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400 (5th Cir. 2001) .......... 19

*Boudreaux v. Stranco Field Servs., LLC*, 2019 WL 2142045 (E.D. La. May 16, 2019) .......... 23, 25

*Brown v. SCF Waxler Marine, LLC*, 2021 WL 199534 (E.D. La. Jan. 1, 2021) .......... 49

*Campos v. Steves & Sons, Inc.*, 10 F.4th 515 (5th Cir. 2021) .......... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 18

*Clark v. Champion Nat'l Security*, 952 F.3d 570 (5th Cir. 2020) .......... 37

*Cochran v. Saul*, 2020 WL 2857391 (E.D. La. May 12, 2020) .......... 32

*Comacho v. R+L Carriers Shared Servs., LLC*, 2023 WL 5615468 (S.D. Tex. Aug. 30, 2023) .......... 34, 50

*Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476 (5th Cir. 2016) .......... 31, 49

*Dube v. Tex. Health & Human Servs. Comm'n*, 2012 WL 2397566 (W.D. Tex. June 25, 2012) .......... 27

*Dunsmore v. Muth*, 154 F.4th 360 (5th Cir. 2025) .......... 20

*E.E.O.C. v. First Metro. Financial Serv., Inc.*, 449 F.Supp.3d 638 (N.D Miss. Mar. 27, 2020) .......... 27

*E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014) .......... 30, 37

*Feist v. La. Dep't of Justice, Office of Atty Gen.*, 730 F.3d 450 (5th Cir. 2013) .......... 41

*Forbis v. Exeter Finance, L.L.C.*, 2022 WL 17986689 (5th Cir. Dec. 29, 2022) ........ 21, 46

*Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800 (5th Cir. 1997) ........ 35, 38

*Franklin v. City of Slidell*, 969 F.Supp.2d 644 (E.D. La. 2013) ........ 36

*Garza-Delgado v. United Indep. Sch. Dist.*, 2017 WL 4326561 (S.D. Tex. Sept. 27, 2017) ........ 24, 27

*Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137 (5th Cir. 1996) ........ 21, 46

*Hammond v. Jacobs Field Servs.*, 499 Fed. Appx. 377 (5th Cir. 2012) ........ 35

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) ........ 23, 25

*Hypes ex rel. Hypes v. First Com. Corp.*, 134 F.3d 721 (5th Cir. 1998) ........ 49

*Ibanez v. Texas A&M Univ. Kingsville*, 118 F.4th 677 (5th Cir. 2024) ........ 19

*In re Placid Oil Co. v. Placid Oil Co.*, 932 F.2d 394 (5th Cir. 1991) ........ 50

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704 (5th Cir. 2021) ........ 18

*Jones v. United States*, 936 F.3d 318 (5th Cir. 2019) ........ 18

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005) ........ 17, 20

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ........ 20

*Lee v. Kan. City S. Ry.*, 574 F.3d 253 (5th Cir. 2009) ........ 21

*Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383 (5th Cir. 2007) ........ 29, 41, 44

*Lester v. Wells Fargo Bank N.A.*, 805 Fed. Appx. 288 (5th Cir. Mar. 12, 2020) ........ 32

*Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365 (5th Cir. 2017) ........ 18

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ........ 18

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020) ........ 41, 43

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............18

*McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354 (5th Cir. 2017) ......................18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................. 20, 49

*McIntyre v. San Antonio Water Sys.*, 2017 WL 1532608
(W.D. Tex. Apr. 26, 2017) ......................................................................... 23, 25

*Miller v. Metrocare Servs.*, 809 F.3d 827 (5th Cir. 2016) ......................................35

*Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702 (S.D. Tex. 2014) ...........................45

*Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413 (5th Cir. 2017) ... 32, 49

*Munoz v. H&M Wholesale, Inc.*, 926 F.Supp. 596 (S.D. Tex. 1996) ......................36

*Muslow v. La. State Univ. & Agric. & Mech. Coll. Bd. of Supervisors*,
2023 WL 5498952 (5th Cir. Aug. 24, 2023) .......................................................21

*Newman v. Tex. Parks & Wildlife Dep't*, 2018 WL 2722271
(S.D. Tex. June 6, 2018) ....................................................................................21

*Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978) ....................................50

*Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814 (5th Cir. 2022) ........ 21, 46

*Portis v. First Nat'l Bank*, 34 F.3d 325, 328-29 (5th Cir. 1994) ............................22

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998) ...................... 17, 43

*Raggs v. Miss. Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002) .................. 44, 45

*Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678 (5th Cir. 1996) ............................. 30, 39

*Roberson v. Alltell Info. Servs.*, 373 F.3d 647 (5th Cir. 2004) ...............................42

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) ........................41

*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022) ......... 20, 49

*Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023840
(M.D. La. Oct. 19, 2011) ....................................................................................30

*Silva v. City of Hidalgo, Tex.*, 575 Fed. Appx. 419 (5th Cir. 2014) ........... 31, 33, 49

*Smith v. AT&T Solutions, Inc.*, 90 Fed. Appx. 718 (5th Cir. 2004)........................41

*Smith v. Tex. Dep't of Water Res.*, 818 F.2d 363 (5th Cir. 1987)............................44

*Stockton v. Christus Health Se. Tex.*, 2017 WL 1287550 (E.D. Tex. Feb. 3, 2017)........................................................................35

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007) ..................42

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) ............................. 40, 47

*Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021)............................. 30, 35

*Tiller v. City of Jackson*, 2025 WL 1426092 (S.D. Miss. May 16, 2025) ................................................................ 31, 40, 47, 49

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ..............................................17

*Turco v. Hoescht Celanese Corp.*, 101 F.3d 1090 (5th Cir. 1996)..........................30

*Turner v. Bd. of Supervisors of Univ. La. Sys.*, 644 F.Supp.3d 221 (E.D. La. 2022)..........................................................................................38

*Turner v. BNSF Railway Co.*, 2023 WL 9052248 (N.D. Tex. Dec. 22, 2023)......................................................................34

*United States v. Lawrence*, 276 F.3d 193 (5th Cir. 2001) .......................................32

*Walton v. Bisco Indus.*, 119 F.3d 368 (5th Cir. 1997) ............................................44

*Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422 (5th Cir. 2022)..................42

*West v. City of Houston, Tex.*, 960 F.3d 736 (5th Cir. 2020)..................................20

*Wilkerson v. Boomerang Tube, LC*, 2014 WL 5282242 (E.D. Tex. Oct. 15, 2014) ............................................................... 31, 49

*Williams v. J.B. Hunt Transp.*, 826 F.3d 806 (5th Cir. 2016).................................34

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014)...............................................46

*Yancy v. U.S. Airways, Inc.*, 2011 WL 2945758 (E.D. La. July 20, 2011) .............42

**Statutes**

28 U.S.C. § 1291 ..................................................1

28 U.S.C. § 1331 ..................................................1

42 U.S.C. § 12101 ..................................................4

42 U.S.C. § 2000e ..................................................4

La. R.S § 23:301 ..................................................4

La. R.S. § 23:967 ..................................................4

La. R.S. § 33:2475 ..................................................38

La. R.S. § 33:2479(G) ..................................................10

La. R.S. § 33:2481 ..................................................38

La. R.S. § 33:2485 ..................................................39

La. R.S. § 33:2560(A)(13) .................................................. 13, 45

**Other Authorities**

29 C.F.R. Pt. 1630.2(o) .................................................. 35, 37

**Rules**

5th Cir. R. 28.2.1 .................................................. i

5th Cir. R. 28.2.2 ..................................................19

E.D. La. LR 56.2 ..................................................14

E.D. La. LR 78.1 ..................................................50

FED. R. APP. P. 28(a)(8)(A) ..................................................19

FED. R. APP. P. 32(a)(5) ..................................................54

FED. R. APP. P. 32(a)(6)........................................................................54

FED. R. APP. P. 32(a)(7)........................................................................54

FED. R. APP. P. 32(g)(1) .......................................................................54

FED. R. APP. P. 34(a)(2)(c) .................................................................... iii

Fed. R. Civ. P. 56(a)...............................................................................18

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction over the appeal of Plaintiff-Appellant pursuant to 28 U.S.C. § 1291 because this matter arises out of a final Judgment disposing of Plaintiff's Title VII, ADA, LEDL, and La. R.S. § 23:967 claims in their entirety, with prejudice.

## STATEMENT OF THE ISSUES

1. Whether the District Court properly granted summary judgment dismissal of *Title VII sex discrimination claim,* in finding Payne failed to satisfy her prima facie burden and failed to show the City's non-discriminatory reasons were pretextual *regarding light duty.*

2. Whether the District Court properly granted summary judgment dismissal of *Title VII sex discrimination claim*, in determining Payne failed to satisfy her prima facie burden and failed to show the City's non-discriminatory reasons were pretextual regarding *sick leave policy notification requirements.*

3. Whether the District Court properly granted summary judgment dismissal of *Title VII sex discrimination claim*, in determining Payne failed to satisfy her prima facie burden and failed to show the City's non-discriminatory reasons were pretextual regarding *sick leave disciplinary actions.*

4. Whether the District Court properly granted summary judgment dismissal of *ADA and LEDL disability discrimination claims,* in determining Payne failed to demonstrate a prima facie case of failure to accommodate by *indefinite leave to recover from surgery.*

5. Whether the District Court properly granted summary judgment dismissal of *ADA and LEDL disability discrimination claims,* in determining Payne failed to demonstrate a prima facie case of *failure to assign light duty.*

6. Whether the District Court properly granted summary judgment dismissal of *ADA and LEDL disability discrimination claims,* in determining Payne failed to demonstrate a prima facie case of *failure to lift sick leave home recovery requirements*.

7. Whether the District Court properly granted summary judgment dismissal of *ADA and LEDL disability discrimination claims,* in determining Payne failed to demonstrate a prima facie case of *failure to accommodate by reassignment*.

8. Whether the District Court properly granted summary judgment dismissal of *ADA and LEDL disability discrimination claims,* in determining Payne did not show the City failed *to engage in good-faith, interactive process*.

9. Whether the District Court properly granted summary judgment dismissal of *Title VII retaliatory demotion claim,* in determining Payne failed to establish a genuine issue of material fact on whether the City's demotion reasons were pretextual or a retaliatory motive played a role in disciplinary decision.

10. Whether the District Court properly granted summary judgment dismissal of *Title VII and La. R.S. 23:967 retaliatory discharge claim,* in determining Payne failed to demonstrate a prima facie case of retaliatory discharge.

11. Whether the District Court properly granted summary judgment dismissal of *Title VII and LEDL wrongful termination claim,* in determining Payne failed to demonstrate a prima facie case and failed to show the City's termination reasons were false or motivated by an improper motive.

12. Whether the District Court's summary judgment dismissal of all claims before bench trial and without oral argument was reversible error.

# STATEMENT OF THE CASE

## I. PROCEDURAL BACKGROUND

Appellant Jennifer Payne ("Payne") filed suit on July 25, 2024 against Appellee Hammond City ("the City") under Title VII, 42 U.S.C. § 2000e; the ADA, 42 U.S.C. § 12101; Louisiana Employment Discrimination Law ("LEDL"), La. R.S § 23:301 *et seq.*; and La. R.S. § 23:967. **ROA.11-26, amended at ROA.107-120.**[1] At summary judgment, remaining claims consisted of Title VII sex discrimination, ADA and LEDL disability discrimination, and wrongful termination and retaliation claims under Title VII, the LEDL, or La. R.S. § 23:967. **ROA.258 n.167.**

The City filed a motion for summary judgment seeking dismissal of all remaining Title VII, ADA, LEDL and La. R.S. § 23:967 claims. **ROA.564-1154.** Payne filed an Opposition. **ROA.1156-1460.** The City filed a Reply. **ROA.1462-1511.** On November 6, 2025, the District Court granted summary judgment dismissal of all Title VII, ADA, LEDL and La. R.S. 23:967 claims, and entered final judgment. **ROA.1809-1851.** Payne filed this appeal. **ROA.1852-1853.**

## II. FACTUAL BACKGROUND

This suit arises against facts showing Payne was on paid extended sick leave from September 2, 2022 through December 18, 2023 – over fifteen months. During

[1] Several claims were dismissed with prejudice: (i) punitive damages under all counts; (ii) ADA compensatory damages; (iii) Rehabilitation Act claim; (iv) La. R.S. § 23:967 retaliatory demotion claim; and (v) LEDL retaliation claims. **ROA.258.** Title VII, ADA, and LEDL hostile work environment claims were dismissed without prejudice. **ROA.258.**

this period, Payne was not eligible to return due to Sick Leave Policy requirements, lack of healthcare authorization, expired firearms certification, refusal of her physician to authorize fit-for-duty testing, and two physician job analyses finding Payne's restrictions were likely permanent and an inability to safely perform essential duties for a likely permanent duration. During this same period, Payne violated the Sick Leave Policy, *twice*, by taking a cruise to Mexico on September 5-10, 2022, and attending a fundraiser event on March 18, 2023 – without authorization, while on sick leave and holding a supervisory rank. Two IA investigations, including pre-disciplinary hearings with Payne and legal and union representatives, confirmed the policy violations. Subsequent discipline of a demotion and suspension were based on consultation with the Office of State Examiners. On December 18, 2023, Payne was removed from service due to unchanged findings of an inability to safely perform essential duties.

**A. HPD Employment History**

Payne was hired by the Hammond Police Department ("HPD") in July 2000 as a Communications Officer, reclassified as a Police Officer in 2002, promoted to Sergeant in 2017, and promoted to probationary Lieutenant in February 2022. **ROA.567-568 nos.1-5, 640-645.** Payne was initially assigned as a Lieutenant of Records and Communications but was transferred to the Patrol Division in May 2022. **ROA.568 nos.9-10, 661 no.6.**

### B. Initiation of Sick Leave and Light Duty Request (September 2, 2022)

In April 2022, Payne scheduled vacation on September 5-10, 2022. **ROA.568 no.8, 651:1-652:19.** Months later, Payne underwent a cervical injection on September 1, 2022, and was unable to work on September 2. **ROA.568 nos.12-13, 652:22-653:17, 654:8-19, 670.** Her absence was designated as sick leave. **ROA.655:1-5, 670.**

On Friday, September 2, 2022, at 12:47 p.m., Payne submitted an Attending Physician Report ("APR") approving light duty to begin Saturday, September 3-10, with significant restrictions. **ROA.665-666 nos.23-24, 671-672.** Sick leave on September 2 was Payne's 32nd instance of sick leave and 7th non-consecutive sick leave. **ROA.666 nos.25-28.** For non-consecutive leave, HPD General Order No. 140 states: "on fifth (5+) absence personnel will be required to report to the city physician and provide required documentation." **ROA.675-676 at §F(3).** Payne was notified by Captain Scivicque on September 2nd of requirement to report to the city doctor before returning. **ROA.679, Bergeron at ROA.1135:9-25.** Thus, on September 3, Payne was <u>not</u> eligible to return and remained on sick leave. **ROA.655:6-15, 656:18-25, 666 nos.25-28.**

### C. Cruise to Mexico While on Sick Leave (September 5-10, 2022)

Sick leave begins upon notification and continues until an officer returns to duty. **ROA.673-674 §B.** Employees are required to recover at home, with exceptions

for activities listed in the policy, approved by HR or Police Chief or his designee, or prescribed by a city doctor APR. **ROA.674-675 §E.** Contrary to this policy, Payne took a cruise to Mexico on September 5-10, 2022, without authorization, while on sick leave, and before reporting to the city doctor. **ROA.671-672, Payne at ROA.942:23-943:2, Bergeron at ROA.1135:1-3, 1138:23-1139:3.**

### D. Cruise Disciplinary Investigation (September 9, 2022)

On September 9, 2022, Internal Affairs ("IA") began investigating Payne's cruise while on sick leave (IA No. 22-05). **ROA.682-695, 701.** Despite a vacation request in April 2022, Payne admitted that after submitting a Sick Leave APR on September 2, 2022, the Sick Leave policy applied and she was on sick leave on September 3-4, 2022. **ROA.687 ¶8, 691 no.2, Bergeron at ROA.1148:22-1149:8.** Payne also admitted she had no authorization from the Police Chief, Assistant Chief, or Captains to take a cruise while on sick leave. **ROA.655:1-15, 688 ¶¶9-10, 691 no.1.** The investigation found a Sick Leave policy violation and Conduct Unbecoming an Officer**. ROA.693-695.** Payne was notified of the findings on November 18, 2022. **ROA.698-701.**

### E. Light Duty Request and Unfulfilled City Doctor Requirement (September 16, 2022)

On September 15, 2022, Payne underwent a second cervical injection and submitted a physician APR approving light duty on September 15-21. **ROA.721-722, Payne at ROA.945:8-947:11.** At this time, Payne had still not reported to the

city doctor, as she slept through a September 19 city doctor appointment that was rescheduled by HR to October 5, 2022. **ROA.727, 730.** Thus, Payne remained ineligible to return and on paid sick leave. **ROA.656:18-25.**

### F. Lack of Physician Authorization to Work (Sept. 21, 2022 – July 31, 2023)

Before reporting to the City Doctor on October 5, Payne submitted a superseding APR from her personal doctor on September 21, 2022, stating: "cannot return to work until pending MRI results." **ROA.723.** Payne later underwent a lumbar fusion on December 28, 2022. **ROA.740, 797.** APR's submitted September 21, 2022–July 31, 2023 each reported Payne "cannot return to work until TBD." **ROA.730-732, 736-740.**

### G. Pausing Probationary Lieutenant Working Test Period (Oct. 25, 2022)

During extended sick leave, Payne's probationary Lieutenant working test period was paused, effective September 2, 2022, until return to duty. **ROA.741-742.** Pausing a working test period may occur while on extended leave. **ROA.743, ROA.664 ¶¶5-11, Bergeron at ROA.1146:1-25.**

### H. Expiration of Firearms Qualification (Feb. 18, 2023)

Firearms qualification expires after 13 months. **ROA.639 ¶3, ¶7.** Payne last qualified on January 18, 2022, and her firearms qualification expired on February 13, 2023, while on sick leave. **ROA.639 ¶¶9-10, 667 no.38, 744.** To requalify, an officer must complete the POST Pre-Academy test and physically shoot the qualification course four times with an average score of 96/120. **ROA.639 ¶4.** Each

stage is timed, and officers must shoot from standing and kneeling positions. **ROA.639 ¶5, Bergeron at ROA.1140:2-15.** Requalification must occur before an officer can return to duty and carry a service weapon. **ROA.639 ¶8, Bergeron at ROA.1139:5-1140:1.**

### I. Attending Fundraiser Event While on Sick Leave (March 18, 2023) and Fundraiser Disciplinary Investigation (March 29, 2023)

On March 18, 2023, while on extended sick leave, Payne attended a fundraiser without authorization. **ROA.746, 751, 785:19-25, 790:11-791:22.** On March 29, 2023, Payne was notified of an investigation (IA No. 23-03). **ROA.748, 763.** Thereafter, Payne began submitting healthcare letters requesting she be permitted to participate in events outside her home with restrictions. **ROA.738, 797-801.** Each letter post-dated Payne's unauthorized attendance at the fundraiser. **ROA.748, 786:18-787:5, Payne at ROA.953:19-955:10, 956:8-957:8, 958:19-959:8.** Moreover, the letters did not request a waiver of home recovery policy requirements, and did not request permission for Payne to leave home, for any reason, at any time, without notification. **ROA.674-675 §E, 738, 797-801.**

### J. EEOC Charge Filing (May 3, 2023)

On May 3, 2023, Payne formalized an EEOC Charge of Discrimination. **ROA.802-803.** The EEOC Charge was filed after the September 2022 and March 2023 sick leave violations, after notice of two IA investigations, after notice of cruise investigation findings on November 18, 2022, and after the fundraiser investigation

interview on April 27, 2023. **ROA.682-695, 701, 748, 763, 770.**

**K. Completion of Fundraiser Investigation and OSE Consult (May 4, 2023)**

The City completed the fundraiser investigation on May 4, 2023. **ROA.748.** This same date, the City consulted the Office of State Examiners ("OSE") regarding Payne's sick leave violations. **ROA.661-662 ¶¶15-17.** The OSE is the governing civil service agency. La. R.S. §33:2479(G). *See also* **Bergeron at ROA.1115:11-12, 1115:23-1116:19, 1120:4-13, 1121:9-19, 1142:10-1143:8** (confirming regular OSE consultations). The State Examiner (Adrienne Bordelon) and Deputy Examiner (Kesha Feigley) attended the meeting and identified termination or demotion as disciplinary action for the cruise investigation. **ROA.662 ¶¶15-17, Bergeron at ROA.1143:9-1144:17.** The City selected demotion as discipline for the unauthorized cruise while on sick leave in a supervisory rank. **ROA.662 ¶18, 805-809, Bergeron at ROA.1116:21-1117:22** (noting demotion as potential discipline), **1118:9-13** (distinguishing violations as supervisor versus lower-rank officer)**.**

**L. Notice of Fundraiser Investigation Findings and Notice of EEOC Charge (May 9, 2023)**

Payne was notified on May 9, 2023 of investigation findings of a Sick Leave policy violation and Conduct Unbecoming an Officer for unauthorized attendance at fundraiser while on sick leave. **ROA.748.** On this same date – <u>after</u> completion of two IA investigations and the OSE consultation – the City received notice of Payne's EEOC charge. **ROA.661-662 ¶¶15-17, 701, 748, 804.**

**M. Demotion to Police Officer Rank (May 25, 2023)**

On May 25, 2023, Payne was notified of a demotion from probationary Lieutenant to Police Officer rank for two years regarding the cruise investigation. **ROA.805-809.** Per OSE guidance, Payne was demoted from the last permanent rank held (Sergeant) to next lower rank of police officer. **ROA.643-645, Mauro at ROA.926:4-928:10, Bergeron at ROA.1092:17-20, 1093:1-9, 1113:24-1114:12, 1143:18-1144:17, 1147:1-3.**

**N. Unserved Disciplinary Suspension (August 8, 2023)**

On August 8, 2023, Payne was notified of a suspension without pay for one working day, to be scheduled upon return to duty, regarding the fundraiser investigation. **ROA.779, 824-826.** Payne did not serve this suspension. **ROA.661-663 ¶¶24-25, Bergeron at ROA.1147:4-15.**

**O. New Authorization to Return for Limited Duty (August 1, 2023)**

On July 31-August 1, 2023, Payne submitted new APR's approving light duty on August 1, 2023. **ROA.827-828.** Per City policy, fit-for-duty testing is required <u>before</u> returning from extended sick leave. **ROA.673-677 §§D, F(6).** However, on August 23, 2023, Payne's physician refused approval for fit-for-duty testing after finding "medical contraindications or significant risks exist" and "cannot safely undergo prework/return to work screening until to be determined." **ROA.848.** Scheduled fit-for-duty testing was cancelled, and Payne remained ineligible to return. **ROA.849-853, McMahon at ROA.1071:16-1074:13, 1075:24-1077:16.**

**P. Interactive Process Finds Permanent Restrictions (Aug. 30-Sept. 25, 2023)**

On August 30, 2023, the City initiated an interactive process by requesting recommendations from Payne's physician. **ROA.856-866.** A Job Analysis by Dr. Oberlander, dated September 25, 2023, recommended: No lifting greater than 35-40lbs; minimal bending/twisting; standing limited to 0-2 hours; and shifts limited to 8 hours with "mostly sitting and limited walking and lifting." **ROA.869-870 nos. 3, 5.** Work restrictions were listed as "likely permanent" and precluded safe completion of essential duties for "likely permanent" duration. **ROA.869-870 nos. 2, 4.**

**Q. Additional Light Duty Authorizations (October 6-26, 2023)**

An October 6, 2023 APR by Deborah Sellers N.P. approved limited duty for August 23, 2023 through "t.b.d." **ROA.871.** An APR by Michael Christner M.D., dated October 26, 2023, also approved limited duty for Aug. 23, 2023 through "to be determined." **ROA.872.** At this time, Payne's firearms qualification was expired, and she lacked doctor approval for fit-for-duty testing. **ROA.639 ¶¶9-10, ROA.667 no.38, ROA.848.** Thus, Payne remained ineligible to return – in any capacity.

**R. Second Opinion Confirms Permanent Restrictions (November 2, 2023)**

On November 2, 2023, the City doctor, Dr. Christner, submitted a second Job Analysis that noted: "Reviewed Dr. Oberlander's eval and agree." **ROA.873-875.** Dr. Christner similarly found Payne's restrictions were likely "permanent," listed similar substantial restrictions, and also found Payne was unable to safely perform essential duties for "likely permanent" duration. **ROA.873-875 nos. 2-5.**

**S. Hearing on Fitness-For-Duty Status (November 20, 2023)**

On November 20, 2023, the City Attorney held a hearing with Payne, her attorney and union representative, the Assistant Police Chief, and HR Director to review Payne's return-to-duty status. **ROA.880:13-881:14, 882:5-22.** At this hearing, Payne agreed with the two doctors' findings, agreed she could not perform essential duties, did <u>not</u> provide a contrary analysis or fit-for-duty testing authorization, and confirmed she initiated a retirement disability application. **ROA.886:4-11, 887:4-17, 889:17-24, 891:5-22.**

**T. Payne's Request for Unlimited Authorization for Activities Outside Home (November 27-30, 2023)**

On November 27, 2023, Payne submitted a request to leave home, "at my discretion and without notification or approval," to go to the gym, shop, visit friends, attend meetings, and engage in physical activities. **ROA.899-900.** On November 30, 2023, the City approved Payne's request. **ROA.899-900.**

**U. Removal from Service (December 18, 2023)**

On December 18, 2023, Payne was removed from service under La. R.S. § 33:2560(A)(13) due to "development of any defect or physical condition which precludes the employee from properly performing the duties of his position, or the development of any physical condition that may endanger the health or lives of fellow employees." **ROA.906-907, Bergeron at ROA.1122:25-1123:10.** Payne's paid sick leave and benefits continued through December 31, 2023. **ROA.907**.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's Judgment in full. **ROA.1809-1850.** Payne cannot establish Title VII, ADA, LEDL or La. R.S. § 23:967 sex and disability discrimination and retaliation claims against the City of Hammond. On summary judgment, Payne failed to controvert the City's Statement of Uncontested Material Facts, which are deemed admitted per E.D. La. LR 56.2. **ROA.1504-1505.** *Compare* **ROA.567-603** *with* **ROA.1172-1228.** Conclusory assertions, unsupported by record citations, fail to establish a genuine issue of material fact. Additionally, arguments in Appellant's Brief that were not raised before the District Court are waived and cannot be addressed on appeal.

Payne's disability discrimination claims are not legally or factually supportable. During September 2, 2022–December 18, 2023, Payne was not eligible to return to work. Payne's reliance on sporadic light duty approvals, with restrictions, ignores facts showing a requirement to first report to the City doctor, a lack of healthcare approval to work in any capacity from September 21, 2022-July 31, 2023, expiration of firearms qualification, refusal by personal physician to authorize fit-for-duty testing, and two job analyses with substantial restrictions that eliminated or modified essential duties of patrol officer rank and found Payne could not safely perform essential duties for a "likely permanent" duration.

Payne's accommodation requests were not reasonable as a matter of law.

Applicable law and facts show Payne failed to establish a prima facie case of failure to accommodate by light duty, indefinite leave to recover from surgery, reassignment, and alleged failure to engage in interactive process. Alleged failure to accommodate by lifting sick leave policy requirements is also unsupported. The Sick Leave policy permits leaving home for specific reasons or with approval, and Payne failed to show she was prevented from leaving home. Additional allegations that the City denied healthcare requests for Payne to leave home while on sick leave are unproven and inaccurate, as such letters did not request unrestricted authorization to leave home any time, for any reason, without notification under the policy.

Payne also failed to establish a genuine issue of material fact of less favorable treatment than similarly situated male officers, under nearly identical circumstances, regarding light duty and sick leave requirements and disciplinary actions. There are no record facts showing a comparator receiving light duty who, like Payne, failed to report to the city doctor, lacked doctor approval for fit-for-duty testing, held an expired firearm certification, had similar work restrictions modifying or eliminating essential duties, had two doctor analyses finding an inability to safely perform essential duties for a "likely permanent" duration, and similarly violated the sick leave policy while holding a supervisory rank.

Payne's demotion arose from an unauthorized cruise to Mexico while on sick leave in a supervisory rank. This sick leave policy violation was corroborated by an

IA investigation and pre-disciplinary hearing that included Payne's admissions of sick leave status and lack of authorization. The resulting demotion was supported by investigation facts and consultative guidance of the Office of State Examiners. Assertions that Payne's demotion was motivated by her EEOC charge filing are contradicted by a record showing two sick leave violations, two IA investigations, and an OSE advisory meeting - all preceding receipt of notice of the EEOC charge.

Payne's wrongful and retaliatory termination claims fail due to uncontroverted facts showing she was on paid sick leave for over 15 months, lacked fit-for-duty testing authorization, and two doctor analyses found she was unable to safely perform essential duties for a "likely permanent" duration. Payne acknowledged the doctors' findings, admitted she could not perform essential duties, and confirmed initiation of a disability retirement application. Payne's termination was based on uncontroverted non-discriminatory and non-retaliatory reasons.

The District Court did not err in finding Payne failed to establish her prima facie burden and failed to show the City's non-discriminatory and non-retaliatory reasons were pretextual. **ROA.1809-1851.** The summary judgment dismissal of all Title VII, ADA, LEDL and La. R.S. § 23:967 discrimination and retaliation claims against the City should be affirmed, at Appellant Payne's costs.

## SCOPE AND STANDARD OF REVIEW

### I. SCOPE OF APPELLATE REVIEW

This Court may affirm summary judgment on any ground supported by the record, "even if is different from that relied on by the district court." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021). Moreover:

> It is well settled in this Circuit that the scope of appellate review of a summary judgment order is limited to matters presented to the District Court. If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal. If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. An argument must be raised to such a degree that the district court has an opportunity to rule on it.

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). *See also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 629 n.57 (5th Cir. 1993) (limiting summary judgment review to "record before the district court when it ruled"); and *Topalian v. Ehrman*, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992) (limiting inquiry to summary judgment record before trial court; and noting parties cannot add new evidence, theories, or issues on appeal to secure reversal).

In addition, non-movants are "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports [their] claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on a Court to "sift through the record in search of evidence" to support the non-movants' opposition to summary judgment. *Id.*

## II. STANDARD OF REVIEW

A District Court's grant of summary judgment is reviewed *de novo*, and the judgment is affirmed if "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357-58 (5th Cir. 2017). Evidence is construed and reasonable inferences are made in the light most favorable to non-movants. *Id.*

Movant bears the burden of showing there is no genuine issue of material fact. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021). Movant carries this burden if non-movant fails to prove an essential element of their case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Non-movant must point to "specific facts showing that there is a genuine issue for trial." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019). If the summary judgment record could not lead a rational trier of fact to find for non-movant, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is not avoided by "some metaphysical doubt as to the material facts," conclusory allegations, unsubstantiated assertions, or by a "scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

# ARGUMENT

## I. APPELLANT CANNOT RELY ON UNSUBSTANTIATED CONTENTIONS

Fifth Circuit Rule 28.2.2 states "[e]very assertion in briefs regarding matter in the record must be supported by a reference to the page number of the original record…." 5th Cir. R. 28.2.2; *see also* Fed. R. App. P. 28(a)(8)(A) (briefs must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). The "Argument" sections of Appellant's Brief contain numerous conclusory arguments that are unsupported by authority or a record citation. (ECF 26, Appellant Br. at 22-35).

Assertions unsubstantiated by record citations or authorities do not create a genuine issue of material fact for trial. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (nonmoving party must do more than allege an issue of material fact; Rule 56 requires nonmoving party to go beyond the pleadings and designate specific facts showing a genuine issue for trial); *Ibanez v. Texas A&M Univ. Kingsville*, 118 F.4th 677, 682 (5th Cir. 2024) (summary judgment may be granted when "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant").

## II. ISSUES NOT RAISED BEFORE DISTRICT COURT ARE WAIVED

On appeal, Plaintiff argues for the first time – without citation to record evidence – that she "was replaced by a male officer after her demotion and after her

termination." (ECF 26, Appellant Br. at 26, 27, 28). This belated assertion was not raised in Plaintiff's summary judgment opposition to the District court. *See* Summary Judgment Opposition at **ROA.1156-1171**. Arguments not raised before the District Court are waived. *Dunsmore v. Muth,* 154 F.4th 360, 367 (5th Cir. 2025) ("Issues not raised before the district court are not properly before us on appeal."). As the District Court did not have the opportunity to rule on this new argument, it is waived on appeal. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 340 (5th Cir. 2005) ("scope of appellate review on a summary judgment order is limited to matters presented to the district court"); *Keenan v. Tejeda,* 290 F.3d 252, 262 (5th Cir. 2002) (failure to assert a legal reason is waived and cannot be raised on appeal).

## III. DISTRICT COURT DID NOT ERR IN DISMISSING SEX DISCRIMINATION CLAIMS

A *prima facie* Title VII case of sex discrimination requires Payne to show she (i) was in a protected class; (ii) was qualified for her job; (iii) suffered an adverse employment act; and (iv) was treated less favorably than similarly situated males. *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973); *Saketkoo v. Admr of Tulane Educ. Fund,* 31 F.4th 990, 997-998 (5th Cir. 2022). Similarly situated is defined "narrowly, requiring the employee's situations to be nearly identical." *West v. City of Houston, Tex.,* 960 F.3d 736, 740 (5th Cir. 2020). Similarly situated requires:

> [A] Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably under nearly identical circumstances. *Alkhawaldeh v. Dow Chem. Co.,* 851 F.3d 422, 426 (5th

> Cir. 2017) (quoting *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009). This coworker, known as a comparator, must hold the same job responsibilities as the Title VII claimant; must share the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a history of violations or infringements similar to that of the Title VII claimant.

*Forbis v. Exeter Finance, L.L.C.*, 2022 WL 17986689 at *4 (5th Cir. Dec. 29, 2022).[2]

If a *prima facie* case is established (it was not), the inference of discrimination "drops from the case" once the City proffers non-discriminatory reasons. *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Payne must produce substantial evidence that the City's non-discriminatory reasons were pretextual. *Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (evidence must be of "sufficient nature, extent, and quality to permit a jury to reasonably infer discrimination"). Evidence is "substantial" if reasonable people in the exercise of impartial judgment might reach different conclusions. *Newman v. Tex. Parks & Wildlife Dep't*, 2018 WL 2722271, at *12 (S.D. Tex. June 6, 2018).

***Issue No. 1* - District Court properly dismissed Title VII sex discrimination claim regarding light duty.**

Payne contends she produced direct comparator evidence via Affidavit of Officer Ryan Ray (male) "whose testimony is that he was given the opportunity for

---

2 *See Muslow v. La. State Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, 2023 WL 5498952, at *4 (5th Cir. Aug. 24, 2023) ("nearly identical" is often reserved for factfinder, "but only when a plaintiff has produced evidence sufficient for a reasonable factfinder to conclude that the plaintiff and her proffered comparator are similarly situated").

sick leave by the Chief at the same time Payne requested and was rejected light duty." (ECF 26, Appellant Br. 21, 24). Payne is mistaken. "Direct evidence is evidence, which if believed, proves the fact of [discrimination] without inference or presumption." *Portis v. First Nat'l Bank*, 34 F.3d 325, 328-29 (5th Cir. 1994). Ray's Affidavit makes no mention of gender as the reason he was allegedly offered light duty. **ROA.1056-1057.** Thus, the District Court did not err in finding no direct evidence of sex discrimination. **ROA.1818.**

Payne also contends the District Court "applied a heightened 'nearly identical' standard for alleged comparators," and failed to identify why Payne was not "nearly identical" to the comparators. (ECF 26, Appellant Br. at 25). This assertion ignores the District Court's findings that Payne provided no evidence of male officers receiving light duty while ineligible to return under nearly identical circumstances, and failed to "rule[] out that the difference in [Payne's] and her male colleagues' conduct accounts for their difference in treatment." **ROA.1820-1821.**

Payne has not shown a genuine issue of material fact regarding any male officer receiving light duty under nearly identical circumstances. Ryan Ray, Patrick Tomberlin, and Terry Sanchez were identified as light duty comparators. **Payne at ROA.969:22-970:10, 971:16-973:17, ROA.1032 at No. 15, 1056-1057.** There is no evidence, however, that these officers received light duty despite a similar ineligibility to work as Payne. The record shows Payne did not know details of light

duty allegedly offered to Tomberlin **(Payne at ROA.971:16-972:24);** did not know how long Tomberlin, Ray, and Sanchez were out on sick leave **(Payne at ROA.975:17-976:11, 979:1-21);** did not know Sanchez's light duty status **(Payne at ROA.973:10-17);** and did not know the functional limitations of Sanchez or Ray **(Payne at ROA.979:1-21).** The Ray Affidavit also failed to show he was similarly ineligible to return to work or had similar doctor restrictions. **ROA.1056-1057.**

The record does not show any alleged comparator received light duty under nearly identical circumstances.[3] Further evidence shows the Office of State Examiners advised the HPD that light duty is not recognized under civil service law. **Bergeron at ROA.1098:10-25, 1099:1-20, 1112:2-15, 1131:13-1132:1.**[4] And HPD shift forms showed no officer was assigned to "light duty." **Bergeron at ROA.1481:1-1483:9, 1499-1503.** Thus, Payne failed to establish a prima facie case of sex discrimination regarding light duty. **ROA.1821.**

Payne's sex discrimination claim further failed "because she did not rebut [the City's] non-discriminatory reasons for denying her light duty." **ROA.1821-1822.**

---

3 *See McIntyre v. San Antonio Water Sys.*, 2017 WL 1532608, at *7 (W.D. Tex. Apr. 26, 2017) (no evidence comparators were similarly situated, as plaintiff admitted he did not know facts on evaluations and leaves of absence); *Boudreaux v. Stranco Field Servs., LLC*, 2019 WL 2142045, at *9 (E.D. La. May 16, 2019) (failed to establish *prima facie* Title VII case due to lack of nearly identical comparator); and *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (failed to show alleged comparators were similarly situated).

4 *See also* **Mauro at ROA.917:17-918:16** ("There's no light duty right now"); and **Scivicque at ROA.1010:15-25, 1011:8-25** (confirming light duty not available, his personal request for light duty was denied, and "I've always been told there was no light duty here").

Payne was not eligible to return to work, in any capacity, from September 2, 2022 through her dismissal on December 18, 2023 due to unsatisfied city doctor requirements **(ROA. 664-669 at ¶¶25-28, ROA.673-677 at §F(3), (6)),** firearms certification expiration **(ROA. 639 at ¶¶8-10, 744),** lack of medical authorization to work for several months **(ROA.679, 723, 730-732, 736-740),** and refusal of her doctor to authorize fit-for-duty testing required to return from extended sick leave **(ROA.848, McMahon at ROA.1071:1-1074:4, 1075:24-1077:16).**

Such non-discriminatory facts do not establish substantial evidence that light duty was denied based on sex, or that the City's reasons were pretext for sex discrimination.[5] The District Court did not err in finding "no genuine dispute of material fact as to whether [the City's] proffered explanation is worthy of credence," and in "viewing the evidence in a light most favorable to [Payne], no documents or testimony show [the City's] stated reasons for denying [Payne] light duty are pretextual." **ROA.1823.** Accordingly, Payne's sex discrimination claim regarding light duty was properly dismissed as a matter of law.

***Issue No. 2* - District Court properly dismissed Title VII sex discrimination claim regarding sick leave policy requirements.**

Payne contends she was confined to her home while on sick leave while male officers were allegedly "allowed to leave their place of confinement without issue."

---

5 *Garza-Delgado v. United Indep. Sch. Dist.*, 2017 WL 4326561, at *7 (S.D. Tex. Sept. 27, 2017) (pretext must be proven by showing "a discriminatory motive more likely motivated her employer's decision or that her employer's explanation is unworthy of credence).

(ECF 26, Appellant Br. at 11, 26). Such contentions overlook a record showing Payne failed to establish a genuine issue of material fact regarding a similarly situated male officer treated more favorably under nearly identical circumstances regarding sick leave policy requirements. **ROA.1823.** Payne identified Tom Mushinsky and Vince Jones as male officers allegedly permitted to leave home "as they please," and identified David Mauro as an officer permitted to leave home during sick leave after providing a doctor's note. **Payne at ROA.973:18-975:14, 979:22-985:7, and 1032-1033 at Nos. 16-17.** Payne's allegations are undercut, however, by admissions that she was unaware of Mushinky's sick leave issue **(Payne at ROA.974:11-975:5);** she did <u>not</u> know about Jones sick leave status **(Payne at ROA.975:6-14);** she was unsure if Jones received formal approval to leave home for an alleged trip to the beach **(Payne at ROA.980:18-982:20);** and she lacked knowledge of Mauro's injury **(Payne at ROA.984:14-985:7).** Thus, the District Court correctly found Payne failed to make a prima facie case of sex discrimination regarding sick leave policy requirements. **ROA.1823-1825.**[6]

The record further shows that the City's gender-neutral sick leave policy

---

6 *See McIntyre v. San Antonio Water Sys.*, 2017 WL 1532608, at *7 (W.D. Tex. Apr. 26, 2017) (no evidence comparators were similarly situated, as plaintiff admitted he did not know facts on evaluations and leaves of absence); *Boudreaux v. Stranco Field Servs., LLC*, 2019 WL 2142045, at *9 (E.D. La. May 16, 2019) (failed to establish *prima facie* Title VII case due to lack of nearly identical comparator); and *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (failed to show alleged comparators were similarly situated).

(HPD General Order No. 140) provides several permitted reasons to leave home while on sick leave, including the ability to seek approval for other non-listed reasons from HPD supervisors or Human Resources, or as prescribed by a city doctor APR. **ROA.673-677 at §E(2).**[7] Additional uncontroverted facts undermining Payne's disparate home confinement claim show:

(i) Payne's notice to Human Resources of physician-ordered bed rest and driving restrictions in February-March 2023.**[8]**

(ii) Notices by City attorney in February, June, and November 2023 that Payne was not confined to home and only needed to seek approval for specific activities within doctor restrictions.**[9]**

(iii) A lack of proactive efforts by Payne to seek authorization for specific activities outside the home while on sick leave.**[10]**

(iv) Text messages showing Payne provided notice and left her home while on sick leave.**[11]**

(v) A November 27, 2023 request by Payne for approval to leave home "at my discretion and without notification or approval" to go to the gym, shop, visit friends, attend meetings, and participate in physical activities "that will aid in my recovery" within physician restrictions. The City

---

[7] **Bergeron at ROA.1102:15-1104:22, 1129:2-18** (confirming officers can leave home while on sick leave by providing notice to the City).

[8] **ROA.733 (**"I am on bedrest until my appointment on February 13;" and "I can't even drive until March sometime."). *See also* **ROA.734** ("been in bed [r]est for awhile;" "I haven't left the house in 2 weeks except for my doctor's appointment last Tuesday. I'm trying to stay away from 'cooties' as much as I can;" and "I'm scared to death about getting sick and not being able to have my surgery"); and **ROA.657:4-15** (reporting attendance at February 1, 2023 pre-disciplinary hearing was the "third time I left the house since December 27").

[9] **ROA.790:11-793:5, 793:25-794:5, 884:18-885:20, 892:11-22, 894:8-13.**

[10] **ROA.888:11-20** (noting lack of evidence of "active, proactive effort for you to specifically communicate with the City" for activities such as walking stairs, around the neighborhood, or "anything that you believe would have been necessary, I just don't see an active effort").

[11] **ROA.745, 1289-1290**

> approved the request subject to doctor restrictions, city policy, state law, and notification per City policy.[12]

Such non-discriminatory facts show a gender-neutral sick leave policy that only requires notification if leaving home during recovery and did not confine Payne to her home.[13] The District Court did not err in finding no genuine dispute of material fact, as "no documents or testimony show [the City's] stated reasons for holding [Payne] to HPD sick leave requirements are pretextual." **ROA.1825.** Thus, this sex discrimination claim was properly dismissed as a matter of law. **ROA.1823-1825.**

***Issue No. 3*** **- District Court properly dismissed Title VII sex discrimination claim regarding sick leave disciplinary actions.**

Payne contends the District Court "appears to misunderstand" her challenge to the demotion and unserved suspension for her two sick leave policy violations. (ECF 26, Appellant Br. at 26). Payne points to an allegedly "reasonable explanation that she was on approved vacation" when she took an unauthorized cruise to Mexico. (ECF 26, Appellant Br. at 27). Payne further argues demotion "was never used for a first-time sick leave violation," alleged male comparators "were subject to no violation," and another officer (who Payne "strategically" chose not to depose)

---

12 **ROA.899-900**

13 *E.E.O.C. v. First Metro. Fin. Serv., Inc.,* 449 F.Supp.3d 638, 648 (N.D. Miss. Mar. 27, 2020) (an employer "need only articulate–not prove–a legitimate, non-discriminatory reason"); *Dube v. Tex. Health & Human Servs. Comm'n,* 2012 WL 2397566, at *4 (W.D. Tex. June 25, 2012) ("Subjective belief and conclusory allegations of discrimination are insufficient…"); and *Garza-Delgado v. United Indep. Sch. Dist.,* 2017 WL 4326561, at *7 (S.D. Tex. Sept. 27, 2017) (pretext must be proven by showing "a discriminatory motive more likely motivated her employer's decision or that her employer's explanation is unworthy of credence).

planned to testify that he "was never punished for leaving his place of confinement on numerous occasions with full knowledge of command." (ECF 26, Appellant Br. at 26-28, n.44). Such assertions continue to overlook abundant facts to the contrary.

Payne identified two comparators –Tom Mushinky and Vince Jones– who allegedly "violated the sick leave policy…and no discipline was taken." **ROA.1032-1033 at no. 16, and Payne at ROA.974:11-975:15, 980:18-984:13.** However, Payne admitted she did not know details of their sick leave or whether they were authorized to leave home. **Payne at ROA.974:11-975:14, 980:18-982:20.** Other facts show Chief Bergeron was unaware of any other officer similarly violating the sick leave policy by leaving the country, and confirmation of a past termination of a male officer for a sick leave violation. **Bergeron at ROA.1135:1-8, Mauro at ROA.923:15-23, 924:22-925:17**. Thus, Payne failed to establish a genuine issue of material fact showing male officers treated more favorably under nearly identical circumstances and failed to make a prima facie case. **ROA.1827.**

In contrast, the record shows Payne violated the sick leave policy twice by taking a cruise to Mexico on September 5-10, 2022, and attending a fundraiser on March 18, 2023; without authorization, while on sick leave, as a supervisory Lieutenant rank. **ROA. 661-663 at ¶11, 682-684, 685, 686-695, 698-701, 748-767, 785:19-25, 788:18-789:19.** Two IA investigations confirmed Conduct Unbecoming an Officer and violation of the Sick Leave Policy. **ROA.655:1-15, 682-701, 748-**

**779.** And Payne admitted during pre-disciplinary hearings that she did not have authorization from HPD supervisors to take a cruise to Mexico and she did not notify her supervisor of plans to attend a fundraiser –while on sick leave. **ROA.688 at ¶¶9-10, ROA.691 at no.1, ROA.655:1-15, 788:18-789:19.** Assertions of an "approved vacation" and notice to HR of the cruise were previously investigated and disproven by the City. **ROA.689 ¶6, 691 nos.1-4, 696-697.**[14] Finally, the City's demotion decision was supported by consultation with the Office of State Examiners. **ROA.661-663 at ¶¶15-17, Mauro at ROA.914:21-916:24**.

Such uncontroverted facts established non-discriminatory reasons for discipline (demotion, unserved suspension) for the sick leave policy violations. Even viewing the evidence in light most favorable to Payne, the District Court did not err in finding "no documents or testimony show [the City's] stated reasons for disciplining [Payne], but not other male officers, are pretextual."[15] **ROA.1828.** Thus, Payne's sex discrimination claim was properly dismissed as a matter of law.[16] **ROA.1826-1828.**

[14] *See also* **Browder at ROA.995:5-10, 996:10-997:1** (HR does not approve leave); **McMahon at ROA.1067:2-13** (HR does not handle vacation requests); **ROA.658:1-21**, **Payne at ROA.941:19-22** (admitting HR does not approve vacations).

[15] *See also* **Bergeron at ROA.1135:1-8** (unaware of another officer violating sick leave policy by going out of the country).

[16] *Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions.").

## IV. DISTRICT COURT DID NOT ERR IN DISMISSING DISABILITY DISCRIMINATION CLAIMS

A failure to accommodate claim under the ADA and LEDL requires Payne to show (i) she is a qualified individual with a disability; (ii) the disability and limitations were known; and (iii) the City failed to make or denied reasonable accommodations. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021); *Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011) (same analysis applies to ADA and LEDL claims). To prove she was qualified, Payne must show she could perform essential job duties, with or without reasonable accommodation. *Turco v. Hoescht Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996). The ADA does not require an employer to remove or modify essential job duties, reassign existing employees, or hire new employees. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 698 (5th Cir. 2014). Further, Payne bears the burden of showing that a requested accommodation was "reasonable." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

### ***Issue No. 4*** - District Court properly dismissed disability discrimination claim of failure to accommodate by indefinite leave.

Payne contends the District Court erroneously analyzed whether she could perform "the full physical duties of a patrol officer," in part, because her physician attested she could perform essential duties "on light duty with reasonable recovery time." (ECF 26, Appellant Br. at 22, 33). Such assertions are misplaced.

A reasonable accommodation "does not require an employer to wait indefinitely for the employee's medical condition to be corrected." *Silva v. City of Hidalgo, Tex.*, 575 Fed. Appx. 419, 423 (5th Cir. 2014). *See also Wilkerson v. Boomerang Tube, LLC*, 2014 WL 5282242, at *8 (E.D. Tex. Oct. 15, 2014) ("[A]n employer is not obligated to allow a disabled employee to take an indefinite leave of absence for purposes of accommodation."); and *Tiller v. City of Jackson*, 2025 WL 1426092, at *6 (S.D. Miss. May 16, 2025) (citing *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)) (indefinite paid or unpaid leave is not required as a reasonable accommodation).

When removed from service on December 18, 2023, Payne held a patrol officer rank (not Communications Lieutenant) and had been on paid sick leave since September 2, 2022 (over 15 months). **ROA.805-809, 906-907 at ¶1.** Although approved for light duty on August 1, 2023, she was still <u>not</u> eligible to return due to an August 23, 2023 refusal <u>by Dr. Oberlander</u> to authorize "prework/return-to-work testing until to be determined." **ROA.827-828, 848-852, 871-872.** Job analyses by Dr. Oberlander (Payne's personal physician) and Dr. Christner (City doctor) confirmed on September 25 and November 2, 2023, respectively, that restrictions were "likely permanent" and precluded Payne from safely performing essential duties on a "likely permanent" basis. **ROA.869-870, 873-875.** The City held a hearing with Payne and her legal and union representatives, on November 20, 2023,

during which Payne agreed with the doctors' findings, agreed she could not perform essential duties, and confirmed she started an application for retirement disability. **ROA.882:5-883:3, 886:4-11, 887:4-17, 889:17-24, 891:5-22.**

Payne provided no contrary, contemporaneous facts that she could perform the essential duties of her patrol officer rank, with or without reasonable accommodation, when terminated on December 18, 2023. *Moss v. Harris Cty. Constable Precinct One,* 851 F.3d 413, 417 (5th Cir. 2017) (failed to show was qualified at time of termination). Instead, Payne now relies on a Sepetmber 15, 2025 declaration by Dr. Oberlander –two years after his August 2023 fit-for-duty refusal and September 2023 Job Analysis– suggesting Payne could resume essential duties "following appropriate recovery from surgery."[17] **ROA.1276-1277 at ¶¶9-10, 18.** This belated declaration does not show Payne could safely perform essential duties at time of removal, and does not reflect a fit-for-duty date even two years post-employment. ***See id.*; ROA.1276-1277.**[18] *See also Silva v. City of Hidalgo, Tex.,* 575

[17] *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations are not the type of 'significant probative evidence' required to defeat summary judgment."); *Lester v. Wells Fargo Bank N.A.*, 805 Fed. Appx. 288, 292 (5th Cir. Mar. 12, 2020) ("[t]here is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact," and "[b]road legal or factual assertions in an affidavit that are unsupported by specific facts are generally held to be conclusory"); *Cochran v. Saul*, 2020 WL 2857391, at *2 (E.D. La. May 12, 2020) (self-serving and unsupported affidavit statements do not defeat summary judgment "where the evidence in the record is to the contrary").

[18] *See also* **Payne at ROA.938:3-18, 986:14-25** (admitting at deposition, "I don't think I can hold employment on a day-to-day basis as it is right now;" "I do still deal with a good bit of back pain, and my anxiety is ridiculous;" and "I'm concerned that I wouldn't be able to work every day, and I wouldn't be able to fulfill the obligations of a position that was offered to me, so – also, my mental state has not been great").

Fed. Appx. 419, 423 (5th Cir. 2014) (employer not required to wait indefinitely for employee recovery). Consequently, the District Court properly found "[t]here is no genuine dispute of material fact as to whether [Payne] or her doctor provided a date for her return to work, or whether [Payne] could perform the essential functions of her job at the time of her dismissal." **ROA.1836.** Thus, Payne's disability discrimination claim regarding indefinite leave to recover from surgery was properly dismissed as a matter of law. **ROA.1835-1836.**

***Issue No. 5* – District Court properly dismissed disability discrimination claim of failure to accommodate by light duty.**

Payne contends she could have performed essential duties with light duty but fails to show this accommodation was reasonable. (ECF 26, Appellant Br. at 22, 33-34). Uncontroverted facts show Payne was not eligible to return from September 2, 2022 through December 18, 2023 – <u>in any capacity</u>. Payne began extended sick leave on September 2, 2022 – her 32nd sick leave and 7th non-consecutive sick leave. **ROA.684 at ¶2.** Despite light duty authorization on September 3-10, 2022 and September 15-21, 2022 **(ROA.671-672, 722),** Payne was ineligible to return in any capacity because**:**

(i) She had not reported to the city doctor **(ROA.666 nos.25-28, 675-676 at §F(3), 679, 684 at ¶2, Bergeron at ROA.1135:9-25)**,[19]

[19] *See also* **Payne at ROA.656:13-25** (admitting she "had to go see the city doctor;" "I couldn't do anything until I saw the city doctor. I couldn't return to work;" and "you can't return to work until you see the city doctor").

(ii) She was on an unauthorized cruise to Mexico on September 5-10, 2022 **(ROA.671-672, 942:23-943:2, 1135:1-3, 1138:23-1139:3)**, and

(iii) She did not report to the city doctor until October 5, 2022 **(ROA.727, 730)**.

Thus, Payne's light duty requests in September 2022 were <u>not</u> reasonable.[20]

Light duty from September 21, 2022 through July 31, 2023 was unreasonable because record facts confirm Payne could not work in any capacity during this period. **ROA.730-732, 736-740.** New requests for light duty starting August 1, 2023 **(ROA.827-828, 871-872)** were also unreasonable because:

(i) Payne held a patrol officer rank **(ROA.805-809);**

(ii) Payne's firearms qualification expired on February 13, 2023 and required renewal **(ROA.639 at ¶8-10, 744);**[21]

(iii) The Sick Leave Policy required fit-for-duty testing <u>prior</u> to returning from extended leave, <u>in any capacity</u> **(ROA.673-677 at §§D, F(6));**

(iv) Payne's physician refused authorization for fit-for-duty testing due to "medical contraindications or significant risks" **(ROA.848);**

(v) Fit-for-duty testing could not be conducted due to no medical clearance **(ROA.849-855);**[22] and

---

[20] *See Comacho v. R+L Carriers Shared Servs., LLC*, 2023 WL 5615468, at *3 (S.D. Tex. Aug. 30, 2023) (finding plaintiff did not qualify for his job at the time of his termination due to a lack of medical recertification); *Turner v. BNSF Railway Co.*, 2023 WL 9052248, at *4 (N.D. Tex. Dec. 22, 2023) (finding employee was not qualified as a conductor, in part, after denial of recertification and determination by medical examiner that he could not safely perform job duties); and *Williams v. J.B. Hunt Transp.*, 826 F.3d 806, 812 (5th Cir. 2016) (finding plaintiff was not qualified for job, in part, because he did not have required certification).

[21] *See* **Bergeron at ROA.1139:5-1140:1** (confirming state law requires an officer to maintain firearm certification).

[22] **McMahon at ROA.1071:16-1074:13, 1075:24-1077:16** (confirming Payne could not return without clearance for fit-for-duty testing).

(vi) Payne admitted she was not ready for fit-for-duty testing in August 2023 **(Payne at ROA.964:18-20).**

Payne's August 2023 light duty requests were also unreasonable due to additional facts showing: (i) patrol officer duties require traffic stops, securing crime scenes, subduing perpetrators, and using a firearm **(ROA.718-720);** (ii) critical physical demands of patrol officer include carrying 10-150 lbs. 6-33% of day, frequent walking 34-66% of day, and continuous standing >67% of day **(ROA.718-720);** (iii) contrary to these requirements, two job analyses limited Payne to not lifting >35-40 lbs, minimal bending/twisting, standing only 0-2 hours without breaks, and "needs to mostly sit, minimal walking/lifting" **(ROA.869-870, 873-875);** and (iv) Payne agreed with the medical findings <u>and</u> agreed she could not perform essential duties **(ROA.886:4-11, 887:4-17, 889:17-24).**

The City was <u>not</u> required to modify or eliminate essential duties of the patrol officer rank,**[23]** and any such request was <u>not</u> reasonable.**[24]** Job Analyses by two physicians confirmed Payne could not safely perform essential duties of a patrol

[23] 29 C.F.R. Pt. 1630.2(o), at ¶ 8 (not required to reallocate essential duties). *See also Thompson*, 2 F.4th at 467 (employee unqualified if must be excused from essential duties); *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 n.3 (5th Cir. 2016) (ADA does not require transfer of essential duties as accommodation); and *Hammond v. Jacobs Field Servs.*, 499 Fed. Appx. 377, 382 (5th Cir. 2012) (accommodation requiring other employees "to work harder or longer" is not required).

[24] *Stockton v. Christus Health Se. Tex.*, 2017 WL 1287550, at *13 (E.D. Tex. Feb. 3, 2017) ("no obligation to create a new light duty position"); and *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809 (5th Cir. 1997) (ADA seeks to eradicate barriers, but does not relieve employee from essential duties).

officer without modification or elimination – which was not required as a matter of law.[25] Thus, the District Court correctly found that Payne did not establish a prima facie case of failure to accommodate by light duty, and the Court did not err in dismissing this claim as a matter of law. **ROA.1836-1837.**

***Issue No. 6* - District Court properly dismissed disability discrimination claim of failure to lift sick leave policy requirements.**

Payne contends the City failed to lift sick leave restrictions regarding home recovery which "hindered her ability to do activities that would have progressed her healing," and the City "never considered her medical providers recommendations that she be allowed to leave her home to assist in her recovery." (ECF 26, Appellant Br. at 11, 24, 33). Such assertions are unsupported by the record.

The healthcare letters referenced by Payne requested only that she be permitted to participate in activities outside her home. **ROA.797-800.** These requests did <u>not</u>: identify specific activities, request Payne be excused from sick leave policy notification requirements, or request unlimited permission for Payne to leave home, any time, for any reason, without notice. ***Id.*** Additional facts show: (i) Payne was on bed rest until February 13, 2023 and could not drive until March 2023, <u>per doctor instructions</u> **(ROA.733);** (ii) the sick leave policy lists permitted reasons

---

[25] *Franklin v. City of Slidell,* 969 F.Supp.2d 644, 655 (E.D. La. 2013) (altering senior corrections officer duties to only administrative was not reasonable and not required by ADA); *Munoz v. H&M Wholesale, Inc.,* 926 F.Supp. 596, 608 (S.D. Tex. 1996) ("Changing movant from a laborer to a 'light duty' worker is not a reasonable accommodation to assist in the performance of job duties; it is a completely different job.").

to leave home, including "other reasons" with written notification or as prescribed by a Physician APR **(ROA.673-677 at §E);** (iii) Payne was reminded at hearings in February, June, and November 2023 that she could request approval for specific activities **(ROA.657:4-15, 790:11-793:5, 793:25-794:5, 884:18-885:20, 892:11-22, 894:8-13);** and (iv) the City approved Payne's November 27, 2023 request to leave home, "at my discretion and without notification or approval," to go to the gym, shop, visit friends, attend meetings, and engage in physical activities **(ROA.899-900).** Finally, Payne's text messages at the time confirm she left home while on sick leave. **(ROA.1289-1290).**

As correctly found by the District Court: "Simply put, the facts do not demonstrate that HPD policy prevented [Payne] from leaving her home. Rather, they show a policy that requires all officers on sick leave to notify the city before engaging in activities not pre-approved." **ROA.1839.** More importantly, "[l]ifting the notification requirement would not help her perform the essential functions of the job, make her life at work easier, or allow her to enjoy equal benefits and privileges of employment." **ROA.1839 n.196** (citing 29 C.F.R. § 1630.2(o)(1)).[26] Thus, the District Court correctly found Payne did not establish a prima facie case

[26] *See* **ROA.1838 nn.188-189** (citing *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 698 (5th Cir. 2014), and *Clark v. Champion Nat'l Security*, 952 F.3d 570, 587 (5th Cir. 2020), for proposition that reasonable accommodation is a modification to work environment to enable an individual to perform essential duties).

of failure to accommodate by lifting sick leave recovery restrictions, and did not err in dismissing this claim as a matter of law. **ROA.1838-1840.**

***Issue No. 7*** **- District Court properly dismissed disability discrimination claim of failure to accommodate by reassignment.**

For reassignment to be a reasonable accommodation, "a position must first exist and be vacant." *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir. 1997). Further, an employer "is not legally obligated to reassign existing employees to new duties in order to accommodate a qualified employee." *Turner v. Bd. of Supervisors of Univ. La. Sys.,* 644 F.Supp.3d 221, 231 (E.D. La. 2022).

Payne contends she could have returned to work on light duty to perform duties of Sergeant or Lieutenant ranks, as "Lieutenant duties in Communications were primarily supervisory and sedentary." (ECF 26, Appellant Br. at 10, 22, 33-34). Such unsubstantiated arguments ignore facts showing Payne was not eligible to return in any capacity and she held a non-supervisory patrol officer rank after her demotion. **ROA.639 at ¶¶8-10, ROA.664-669 at ¶¶25-28, ROA.673-677 at §F(3), (6), ROA.679, 723, 730-732, 736-740, 744, 805-809, 848, McMahon at ROA.1071:1-1074:4, 1075:24-1077:16.**

Payne also ignores law and additional facts showing a HPD police officer is a civil service classified position. **ROA.863-864**, **McMahon at ROA.1068:8-23**. *See also* La. R.S. § 33:2475 (creating classified civil service for municipal fire and police services); and La. R.S. § 33:2481 (designating police as classified service). A police

officer is a distinct civil service classification from a communications officer (dispatch). **ROA.709-711, 716-717** (listing each position as a separate class); **Scivicque at ROA.1008:16-1009:5, Bergeron at ROA.1133:22-1134:5** (confirming police officer and communications officer are different classifications). As such, Payne could not be reassigned to a different rank (*i.e.*, patrol officer to Lieutenant) and she could not be reassigned as a communications officer because it "is out of their scope of [classified] duty." **Bergeron at ROA.1128:1-13** (civil service employees cannot work outside their class); **Bergeron at ROA.1100:1-8, 1101:3-22** (cannot transfer classifications; must apply and be hired); **Mauro at ROA.919:2-920:25** ("we're categorized, so we can only do our actual job"). *See also* La. R.S. § 33:2485 ("No employee shall be appointed, employed, or paid under any title than that of the class to which the position occupied by him is allocated.").

The record is void of any genuine dispute of material fact regarding reassignment as a reasonable accommodation. *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) (plaintiff must prove a *reasonable* accommodation). Accordingly, the District Court correctly found "reassignment is not a reasonable accommodation," and dismissal of this disability discrimination claim was warranted as a matter of law. **ROA.1840-1841.**

***Issue No. 8* - District Court properly dismissed disability discrimination claim of failure to engage in interactive process.**

Payne contends the HPD "never engaged in a meaningful interactive process."

(ECF 26, Appellant Br. at 23-24, 33). This unsubstantiated assertion ignores facts to the contrary. **ROA.1842** (finding City engaged in interactive process).

When approved for light duty starting August 1, 2023, Payne was not eligible to return prior to fit-for-duty testing. **ROA.673-677 at §§D, F(6).**[27] The record shows that after Dr. Oberlander denied authorization for fit-for-duty testing **(ROA.848)**, the City promptly requested a job analysis by Dr. Oberlander **(ROA.856-866).** After Dr. Oberlander reported "likely permanent" restrictions preventing safe performance of essential duties **(ROA.869-870),** the City sought a second opinion from Dr. Christner, who affirmed and agreed with Dr. Oberlander **(ROA.873-875).** *See also* **McMahon at ROA.1068:24-1070:2** (confirming analyses were "self-explanatory about the restrictions").

Thereafter, the interactive process continued at a hearing with Payne and her legal and union representatives. **ROA.876-878.** At this hearing, Payne and her representatives had the opportunity to discuss the doctors' findings on her restrictions and leave status. **ROA.882:5-883:3.** Payne agreed with the doctors' findings, agreed she could not perform the essential duties of patrol officer rank, did not provide a contrary medical analysis, did not provide authorization for fit-for-

[27] *See Tiller v. City of Jackson,* 2025 WL 1426092, at *6 (S.D. Miss. May 16, 2025) (police officer evaluations of physical, emotional, and mental stability are job-related and consistent with business necessity); *Taylor v. City of Shreveport,* 798 F.3d 276, 286 (5th Cir. 2015) ("As a paramilitary organization charged with maintaining public safety, a police department must ensure that its officers are in peak physical and mental condition.").

duty testing, and confirmed initiation of a disability retirement application. **ROA.882:5-883:3, 886:4-11, 887:4-17, 889:17-24, 890:17-891:22.**

The District Court did not err in finding "such facts do not show bad-faith or a refusal to engage in an interactive process," and finding "no genuine dispute of material facts as to whether [the City] engaged in a good faith, interactive process to find a reasonable accommodation." **ROA.1842.** Accordingly, dismissal of this disability discrimination claim was warranted as a matter of law. **ROA.1841-1842.**

## V. DISTRICT COURT DID NOT ERR IN DISMISSING RETALIATORY DEMOTION AND DISCHARGE CLAIMS

A prima facie retaliation case under Title VII or La. R.S. § 23:967 requires facts showing (i) protected activity; (ii) an adverse employment act; and (iii) a causal link between the two. *Feist v. La. Dep't of Justice, Office of Atty Gen.,* 730 F.3d 450, 454 (5th Cir. 2013); *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 304 (5th Cir. 2020); *see also Smith v. AT&T Solutions, Inc.,* 90 Fed. Appx. 718, 723 (5th Cir. 2004) (applying Title VII retaliation framework to La. R.S. 23:967 claims). If a *prima face* case is established, the City must proffer legitimate, non-retaliatory reasons. *Lemaire v. Louisiana,* 480 F.3d 383, 388 (5th Cir. 2007). *See also Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir. 2000) (employer's burden is production, not persuasion, and involves no credibility assessment). Payne must then show "a conflict in substantial evidence" on whether the adverse act would not have occurred "but for" protected activity. *Strong v. Univ. Healthcare Sys., L.L.C.,*



PD.60729867.1

482 F.3d 802, 806 (5th Cir. 2007); *Abbood v. Tex. Health & Human Servs. Comm'n*, 783 Fed. Appx. 459, 463 (5th Cir. 2019).[28]

***Issue No. 9* - District Court properly dismissed retaliatory demotion claim.**

Payne challenges her demotion from Probationary Lieutenant to Patrol Officer for a first-time sick leave violation, claiming it was unprecedented in HPD history, and claiming she was on approved vacation. (ECF 26, Appellant Br. at 15-17, 21, 23, 27, 31-32). Payne also claims the close timing between her EEOC charge filing and the demotion shows pretext for retaliation. (ECF 26, Appellant Br. at 31-33).

The "fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Yancy v. U.S. Airways, Inc.*, 2011 WL 2945758, at *4 (E.D. La. July 20, 2011) (quoting *Roberson v. Alltell Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004)). The record shows the demotion occurred <u>after</u> an extensive investigation, confirming a sick leave policy violation when Payne took an unauthorized cruise to Mexico on September 5-10, 2022, while on sick leave in a supervisory rank. **ROA.698-700, 805-809.**

The District Court found a prima face case based on temporal proximity **(ROA.1845)** but further found the City "articulated neutral reasons" for the demotion **(ROA.1846).** Payne asserts the District Court required "heightened

---

[28] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022) ("Even if a plaintiff's protected conduct is a substantial element in a defendant's adverse employment action, no liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct.").

evidence of pretext," but provides no evidence in support[29] and points again to temporal proximity. (ECF 26, Appellant Br. at 31). While close temporal proximity may be sufficient for a prima facie case, "it is insufficient to demonstrate pretext." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306-07 (5th Cir. 2020).

Payne does not deny she took a cruise and, despite a superseded past vacation request,[30] admitted that she had no authorization from her supervisors and was on sick leave status.[31] **ROA.655:1-15, 686, 687 ¶8, 688 ¶¶9-10, 691 nos.1-2, 701, Bergeron at ROA.1148:22-1149:8.** The cruise policy violation, investigation, notification of findings, and pre-disciplinary hearing all occurred before Payne filed an EEOC charge on May 3, 2023. **ROA.685, 701, 802-803.** The City also attended an OSE disciplinary consultation before receiving the EEOC charge notice. **ROA.661-663 at ¶¶15-17, Bergeron at ROA.1143:9-1144:17.** While Payne minimizes her violation ("first-time"), she fails to controvert this timeline showing the demotion was based on confirmed investigation findings and OSE consultation, is an available disciplinary action, and another HPD employee was previously terminated for a sick leave violation. **ROA.661-663 ¶¶15-17, Mauro at**

---

29 *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (Rule 56 does not require a Court to "sift through the record in search of evidence").

30 Payne's claim that she was on "approved vacation," including notice to HR, is inaccurate. **ROA.658:1-21**, **ROA.689 ¶6, 691 nos.1-4, 696-697, Payne at ROA.941:19-22, Browder at ROA.995:5-10, 996:10-997:1**, **McMahon at ROA.1067:2-13**.

31 Payne's claim that she was not interviewed during the IA investigation is false. *Compare* Appellant Br. at 17 *with* **ROA.686-689.**

**ROA.914:21-916:24, 923:15-23, 924:22-925:17**, **Bergeron at ROA.1116:21-1117:22, 1118:9-13.**

Finally, while Payne disputes the demotion decision, "discrimination laws are not vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus.*, 119 F.3d 368, 370 (5th Cir. 1997).[32] The District Court did not err in finding Payne failed to establish a genuine issue of material fact that the City's demotion reasons were pretextual or motivated by retaliation.[33] **ROA.1847.** Thus, dismissal of the retaliatory demotion claim was warranted as a matter of law. **ROA.1846-1847.**

***Issue No. 10* - District Court properly dismissed retaliatory discharge claim.**

Payne contends a factual dispute exists as to whether she could perform the essential functions "of her sedentary lieutenant job with reasonable accommodation and dismissal was inappropriate." (ECF 26, Appellant Br. at 33-34). Such assertions fail to controvert facts showing Payne's removal from service occurred after her doctor refused medical clearance for fit-for-duty testing –required to return in any capacity– and two physician analyses found Payne could not safely perform essential duties for a "likely permanent" duration. **ROA.848, 869-870, 873-875, 906-907.** These intervening, non-retaliatory facts show no causal connection between Payne's

---

32 *See also Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (reviewing court conducting pretext analysis is not to engage in second-guessing of employer's decisions).

33 *Smith v. Tex. Dep't of Water Res.*, 818 F.2d 363, 366 (5th Cir. 1987) (Title VII "not intended to immunize insubordinate [or] disruptive…behavior at work"); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (Title VII does not permit employees to ignore work rules).

May 3, 2023 EEOC charge and her removal from service seven months later on December 18, 2023. **ROA.802-803, 906-907.** *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five-month lapse between protected activity and retaliation does not, alone, establish inference of causation).

Payne's removal from service under La. R.S. § 33:2560(A)(13) was supported by a lack of medical authorization for fit-for-duty testing, and uncontroverted doctor analyses finding Payne could not safely perform essential duties of police officer rank for a "likely permanent" duration. **ROA.848, 869-870, 873-875, 906-907, ROA.886:4-11, 887:4-17, 889:17-24, 891:5-22, and Bergeron at ROA.1122:25-1123:10.** The District Court correctly determined that Payne presented only a conclusory allegation that her termination was related to her alleged disability, without establishing a genuine issue of material fact or demonstrating a causal connection between her EEOC charge and her termination. **ROA.1848.** *See also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 719 (S.D. Tex. 2014) ("It is black letter law that an employee's speculation or subjective belief that he was retaliated against because he engaged in protected activity cannot establish pretext."). Thus, Payne's retaliatory termination claim was properly dismissed as a matter of law.[34]

[34] *Abbood v. Tex. Health & Human Servs. Comm'n*, 783 Fed. Appx. 459, 463-64 (5th Cir. Nov. 17, 2019) ("Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones.").

## VI. *ISSUE NO. 11* - DISTRICT COURT PROPERLY DISMISSED WRONGFUL TERMINATION CLAIM

A *prima facie* Title VII and LEDL wrongful termination case requires Payne to show she (i) was in a protected class; (ii) qualified for her job; (iii) suffered an adverse action; and (iv) was replaced by someone outside her protected class or treated less favorably than similarly situated males outside her protected class. *Willis v. Cleco Corp.,* 749 F.3d 314, 320 (5th Cir. 2014). If a *prima facie* case is established (it was not), the inference of discrimination drops from the case after the City proffers non-discriminatory reasons. *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Thereafter, Payne must show a conflict in substantial evidence that the City's reasons were pretextual. *Owens v. Circassia Pharmaceuticals, Inc.,* 33 F.4th 814, 826 (5th Cir. 2022) (evidence must be of "sufficient nature, extent, and quality to permit a jury to reasonably infer discrimination"); *Forbis v. Exeter Finance, L.L.C.,* 2022 WL 17986689, at *5 (5th Cir. Dec. 29, 2022) ("At this stringent pretext stage, a plaintiff must do more than just dispute the underlying facts and argue that the employer made the wrong decision.").

Payne contends factual disputes exist regarding her removal from service (ECF 26, Appellant Br. at 33-34), but her wrongful termination claim similarly fails to overcome non-discriminatory facts to the contrary. When dismissed from service on December 18, 2023, Payne had been on extended paid sick leave since September

2, 2022 – over 15 months. **ROA.906-907.** Initially, on September 2, 2022, Payne was ineligible to return until she reported to the city doctor, and before satisfying this requirement, superseding APR's for September 21, 2022–July 31, 2023 found Payne "cannot return to work until TBD." **ROA.655:6-15, 656:18-25, 666 at nos. 25-28, 679, 723, 730-732, 736-740, Bergeron at ROA.1135:9-25.** Payne's firearm qualification subsequently expired on February 13, 2023, and required renewal. **ROA.639 at ¶¶3-5, 7-10, 744, Bergeron at ROA.1139:5-1140:15.**

When Payne submitted new light duty approval in August 2023 **(ROA.827-828)**, she could not return from extended sick leave in any capacity prior to fit-for-duty testing, along with firearms certification renewal. **ROA.673-677 at §F(6), Bergeron at ROA.1139:5-1140:15.**[35] These return-to-work requirements were not completed. **McMahon at ROA.1071:1-1074:13, 1075:24-1077:16.** Instead, Payne's doctor found "medical contraindications or significant risks exist" and denied authorization for fit-for-duty testing. **ROA.848.** *See also* **Payne at ROA.964:18-20** (admitting was not ready for fitness testing).

In response, the City initiated an interactive process that requested a job analysis from Payne's physician, Dr. Oberlander, and a second opinion from the city

[35] *See Taylor v. City of Shreveport,* 798 F.3d 276, 286 (5th Cir. 2015) ("As a paramilitary organization charged with maintaining public safety, a police department must ensure that its officers are in peak physical and mental condition."); and *Tiller v. City of Jackson,* 2025 WL 1426092 at *6 (S.D. Miss. May 16, 2025) (police officer evaluations of physical, emotional, and mental stability are job-related and consistent with business necessity).

doctor, Dr. Christner. **ROA.856-866, 869-870, 873-875.** Each physician analysis confirmed Payne's restrictions were "likely permanent" and precluded her from safely performing essential duties on a "likely permanent" basis. **ROA.869-870 nos.1-5, ROA.873-875 nos.1-5.** *See also* **McMahon at ROA.1068:24-1070:2** (confirming job analyses "were pretty self-explanatory about the restrictions"). Additional facts regarding Payne's patrol officer rank showed essential duties include traffic stops, securing crime scenes, subduing perpetrators, and using a firearm; and critical physical demands include carrying 10-150 lbs. 6-33% of day, frequent walking 34-66% of day, and continuous standing >67% of day. **ROA.718-720.** In contrast, two physician analyses limited Payne to not lifting >35-40 lbs, minimal bending/twisting, standing limited to 0-2 hrs without breaks, and "needs to mostly sit, minimal walking/lifting" **(ROA.869-870, 873-875).**

The physician analyses were reviewed with Payne and her legal and union representatives at a hearing on November 20, 2023. **ROA.882:5-883:3.** Payne agreed with the doctors' findings, agreed she could not perform essential job functions, did <u>not</u> provide a contrary job analysis, did <u>not</u> provide medical clearance for fit-for-duty testing, and confirmed initiation of a disability retirement application. **ROA.882:5-883:3, 886:4-11, 887:4-17, 889:17-24, 890:17-891:22.**

Such non-discriminatory facts supported the City's determination as of December 18, 2023 that Payne was not a qualified individual and removal from

classified service was warranted under La. R.S. § 33:2560(A)(13).[36] **ROA.906-907, Bergeron at ROA.1122:25-1123:10.** There are no facts showing Payne could perform the essential duties of her patrol officer rank at the time of her removal,[37] and no facts showing a male officer treated more favorably under nearly identical removal from service circumstances.[38] The District Court did not err in finding Payne failed to make a prima facie case and failed to offer evidence showing the City's termination reason –that Payne could not perform essential duties– was pretextual.[39] **ROA.1850.** Thus, Payne's wrongful termination claim was properly dismissed as a matter of law. **ROA. 1849-1850.**[40]

---

36 *See Silva v. City of Hidalgo, Tex.*, 575 Fed. Appx. 419, 423 (5th Cir. 2014) ("Reasonable accommodation does not require an employer to wait indefinitely for the employee's medical condition to be corrected."); *Wilkerson v. Boomerang Tube, LLC*, 2014 WL 5282242, at *8 (E.D. Tex. Oct. 15, 2014) ("[A]n employer is not obligated to allow a disabled employee to take an indefinite leave of absence for purposes of accommodation."); and *Tiller*, 2025 WL 1426092 at *6 (citing *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)) (indefinite paid or unpaid leave is not required as a reasonable accommodation).

37 *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

38 *McDonnell Douglas Corp.*, 411 U.S. at 802; and *Saketkoo*, 31 F.4th at 997.

39 *Tiller*, 2025 WL 1426092 at *6 (citing *Hypes ex rel. Hypes v. First Com. Corp.*, 134 F.3d 721, 726-27 (5th Cir. 1998)) ("The ADA does not prohibit adverse action due to a consequence of a disability, such as being unable to perform essential job duties because of an injury or illness."); and *Brown v. SCF Waxler Marine, LLC*, 2021 WL 199534, at *4 (E.D. La. Jan. 1, 2021) ("[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the Court's inquiry is strictly whether the employer gave an honest explanation of its behavior").

40 *Tiller*, 2025 WL 1426092, at *6 (dismissing ADA termination claim as employee was unable to perform essential job duties, and was not entitled to indefinite, paid leave or alternate or modified Patrol Sergeant duties); and *Comacho v. R+L Carriers Shared Servs., LLC*, 2023 WL 5615468, at *3 (S.D. Tex. Aug. 30, 2023) (granting summary judgment dismissal of ADA claim after finding termination was based on failure to meet DOT medical clearance requirement and inability to accommodate further medical leave was not pretextual).

## VII. *ISSUE NO. 12* - DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT DISMISSAL BEFORE BENCH TRIAL

Payne contends the District Court committed reversible error by granting summary judgment one week before bench trial, without oral argument. (ECF 26, Appellant Br. at 34-35). Initially, Payne fails to cite any authority that prohibits summary judgment dismissal within a certain period before trial. Payne also fails to note that she did not contemporaneously request oral argument pursuant to E.D. La. LR 78.1. ("Any party seeking oral argument must file…a separate written request for oral argument."). **ROA.1894 at ECF 68.**

Payne asserts "summary judgment cannot substitute for trial where factual disputes remain, even when the factfinder is the judge" (ECF 26, Appellant Br. at 35), but fails to note that "a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result;" thus, "[i]f a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of trial.'" *In re Placid Oil Co. v. Placid Oil Co.,* 932 F.2d 394, 398 (5th Cir. 1991) (quoting *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir. 1978)). Here, there are no genuine issues of material fact or witness credibility issues for trial. The District Court properly considered competent summary judgment evidence submitted by the City, and uncontroverted by Payne, to correctly determine Payne would be unable to sustain

her burden of proof at trial. **ROA.1809-1850.** Accordingly, summary judgment dismissal was warranted as a matter of law.

## CONCLUSION

Appellant Jennifer Payne failed to show reversal of the District Court's dismissal of Title VII, ADA, LEDL and La. R.S. § 23:967 discrimination and retaliation claims is warranted. The District Court did not err in finding Payne failed to show a genuine issue of material fact regarding Title VII, ADA, LEDL or La. R.S. § 23:967 discrimination and retaliation claims; thus, Appellee Hammond City is entitled to judgment as a matter of law. Based on applicable law and facts, summary judgment dismissal of all Title VII, ADA, LEDL and La. R.S. § 23:967 claims against Appellee Hammond City should be affirmed, at Appellant Payne's costs.

**Respectfully Submitted,**

*/s/ Maria Nan Alessandra*

**PHELPS DUNBAR LLP**
MARIA NAN ALESSANDRA (#16783)
365 Canal St., Suite 2000
New Orleans, LA 70130
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: nan.alessandra@phelps.com

**AND**

**CASHE COUDRAIN & BASS**
ANDRE G. COUDRAIN (#1789)
106 South Magnolia St. (70403)

P.O. Drawer 1509
Hammond, LA 70404
Telephone: (985) 542-6848
Facsimile: (985) 542-9602
Email: agc@ccbattorneys.com

**APPEAL COUNSEL FOR DEFENDANT-APPELLEE, HAMMOND CITY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2026, I electronically filed the foregoing Original Brief of Defendant-Appellee Hammond City with the Fifth Circuit Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

SO CERTIFIED, this 9th day of April, 2026.

/s/*Maria Nan Alessandra*
Maria Nan Alessandra (#16783)
Andre G. Coudrain (#1789)
**Attorneys for Defendant-Appellee**
**Hammond City**

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Original Brief complies with the word count option of FED. R. APP. P. 32(g)(1) and FED. R. APP. P. 32(a)(7) because this document contains 12,645 words, excluding those items contained in FED. R. APP. P. 32(f) and 5th Cir. R. 32.2.

This Original Brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, Version 2602, in 14-point Times New Roman font, with footnotes in 12-point Times New Roman font.

SO CERTIFIED, this 9th day of April, 2026.

/s/*Maria Nan Alessandra*
Maria Nan Alessandra (#16783)
Andre G. Coudrain (#1789)
**Attorneys for Defendant-Appellee**
**Hammond City**



PD.60729867.1